## S02P0112. RAHEEM v. THE STATE.
(560 SE2d 680)

HINES, Justice.

Mustafa Askia Raheem was convicted on two counts of malice murder, four counts of felony murder, two counts of armed robbery, and one count of burglary.[1] The jury fixed the sentence for the malice murder of the first victim, Brandon Hollis, at life imprisonment without parole, after finding beyond a reasonable doubt that the murder was committed for the purpose of receiving things of monetary value. See OCGA § 17-10-30 (b) (4). The jury fixed the sentence for the malice murder of the second victim, Miriam Hollis, at death, after finding beyond a reasonable doubt that her murder was committed during the commission of the murder of Brandon Hollis, during the commission of a burglary, during the commission of an armed robbery, and for the purpose of receiving things of monetary value. See OCGA § 17-10-30 (b) (2) and (4). For the reasons that follow, Raheem's convictions and sentences are affirmed.

1. The evidence adduced at the guilt/innocence phase of Raheem's trial showed the following. On April 2, 1999, Raheem picked up Michael Jenkins and Dione Feltus in Raheem's girlfriend's blue Honda automobile. Raheem dropped Mr. Feltus off at his place of employment at 4:00 p.m., where, according to the testimony of Mr. Feltus's manager, Mr. Feltus remained until 10:00 p.m. Raheem told Jenkins that he wanted to shoot his .380 caliber handgun. He then shot the handgun out the window of the blue Honda, explaining to Jenkins that he wanted to make sure the weapon would not jam. Raheem purchased black plastic trash bags at a grocery store and called Brandon Hollis from a nearby payphone. Raheem picked up Brandon Hollis and then drove Brandon Hollis and Jenkins to a remote location, where Raheem fired his .380 caliber handgun in the direction of a tree and handed the handgun to Jenkins. After Brandon Hollis said the handgun was too loud, Raheem took the handgun from Jenkins and began walking toward the blue Honda. As Jenkins

---

[1] Raheem was indicted on these charges May 6, 1999, by a Henry County grand jury. The State filed the first written notice of its intent to seek the death penalty May 19, 1999. Raheem's trial began February 5, 2001, the jury found him guilty on all charges February 15, 2001, and the jury fixed the sentence for the malice murder of Brandon Hollis at life imprisonment without parole and the sentence for the malice murder of Miriam Hollis at death February 17, 2001. The trial court properly vacated the felony murder convictions and imposed the jury's sentences for the malice murders. See *Malcolm v. State*, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993); OCGA § 16-1-7 (a) (1). The trial court further imposed consecutive sentences of life imprisonment for each of the two armed robberies and twenty years for the burglary. Raheem filed a motion for a new trial March 19, 2001, which the trial court denied in an order filed August 31, 2001. Raheem filed a notice of appeal September 28, 2001, and the appeal was docketed in this Court October 9, 2001, and orally argued January 14, 2002.

walked some distance behind Raheem and Brandon Hollis, Raheem shot Brandon Hollis in the head. Jenkins inquired whether Brandon Hollis was dead, and Raheem replied, "No, but he is on his way out." Raheem then took Brandon Hollis's watch and commented to the dying man, "I guess you ain't going to be needing this watch no more." Raheem also took Brandon Hollis's keys and commented to Jenkins, "I'm glad you didn't run."

After killing Brandon Hollis, Raheem drove himself and Jenkins to the home of Miriam Hollis, Brandon Hollis's mother. Raheem opened Ms. Hollis's door with Brandon Hollis's key and instructed Jenkins to bring a trash bag into the home. Ms. Hollis stood to her feet as Raheem and Jenkins entered her home, and Raheem fired a shot at her but missed her. Raheem then ordered Ms. Hollis to her hands and knees and shot her in the head. Raheem placed the trash bag over Ms. Hollis's head, got Ms. Hollis's keys from her kitchen, placed Ms. Hollis's body in the trunk of her white Lexus automobile, and then attempted to mop up Ms. Hollis's blood inside the home. Raheem told Jenkins later that he previously had given Ms. Hollis money for the Lexus automobile but that she had refused to give the automobile to him.

Raheem drove with Jenkins in Ms. Hollis's Lexus to visit Raheem's girlfriend, Veronica Gibbs. Raheem boasted that he had a new automobile, opened the trunk to show Gibbs Ms. Hollis's body, and informed Gibbs that he had shot the woman and a young man. Later, Raheem drove back to Ms. Hollis's home with Jenkins and Gibbs, where they burglarized the home, stole a number of items, and retrieved Gibbs's blue Honda. Later, Raheem changed his shoes, which had blood on them, and drove with Jenkins to dispose of Ms. Hollis's body. The body was placed underneath planks and tires, doused with a flammable liquid, and set ablaze.

Viewed in the light most favorable to the guilt/innocence phase verdicts, the evidence adduced at the guilt/innocence phase was sufficient to enable a rational trier of fact to find beyond a reasonable doubt that Raheem was guilty of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

### Pretrial Issues

2. Raheem contends that the trial court erred by overruling his demurrer to counts four and six of his indictment. Those counts charged Raheem with felony murder, alleging that Raheem "did . . . unlawfully while in the commission of a felony, to wit: Possession of a Firearm by a Convicted Felon, cause the death of [the victims] by shooting [them] with a gun, contrary to the laws of [the] State. . . ."

Raheem correctly argues that possession of a firearm by a convicted felon can serve as the underlying felony in a felony murder charge only where the possession of the firearm was somehow "inherently dangerous." See *Ford v. State*, 262 Ga. 602-604 (1) (423 SE2d 255) (1992) (holding that an accidental shooting of an unanticipated victim by a convicted felon while the felon was unloading a firearm in his apartment could not support a felony murder conviction); compare, e.g., *Hulme v. State*, 273 Ga. 676, 677-679 (1) (544 SE2d 138) (2001) (holding that a violation of the controlled substances statute was, under the particular facts shown by the evidence at trial, "inherently dangerous to human life"). Raheem does not contend that the possession of the firearm in his case was not shown *at trial* to be inherently dangerous, but he argues that, because the contested counts of his indictment did not specify how or why the possession of the firearm was necessarily inherently dangerous to the victims, those counts failed to satisfy the requirement that a charge in an indictment be "wholly complete within itself, and plainly, fully, and distinctly set out the crime charged in that count." *Smith v. Hardrick*, 266 Ga. 54, 55 (1) (464 SE2d 198) (1995). This contention is moot in light of the trial court's vacating Raheem's felony murder convictions. *Laney v. State*, 271 Ga. 194, 195 (2) (515 SE2d 610) (1999). Furthermore, Raheem's argument is without merit. OCGA § 17-7-54 provides that "[e]very indictment of the grand jury which states the offense in the terms and language of this Code or so plainly that the nature of the offense charged may easily be understood by the jury shall be deemed sufficiently technical and correct." An indictment that tracks the language of the Code and can be "clearly and easily understood" has been held to be sufficient. *Burgeson v. State*, 267 Ga. 102, 103 (1) (475 SE2d 580) (1996); compare *Langston v. State*, 109 Ga. 153 (35 SE 166) (1899) (reversing where indictment, although pled in language of the Code, was inadequate to give "reasonable notice" to the defendant of what he was "called upon to meet"); *Kyler v. State*, 94 Ga. App. 321, 323-324 (3) (94 SE2d 429) (1956) (noting that an indictment pled in the language of the Code might be insufficient if it fails to inform the defendant of "enough of the particular facts constituting the alleged offense to be able to prepare for trial"). Here, Raheem's indictment was pled in the "terms and language" of the Code and was fully sufficient to place him on notice of the issues to be decided and to allow him an opportunity to prepare his defense, including the opportunity to present evidence that the possession of the firearm was not inherently dangerous so that any conviction for felony murder based on the possession of the firearm could be challenged on appeal. Further specificity in the indictment was not required.

3. Because this Court has directed that all executions in Georgia

be carried out by lethal injection, Raheem's argument that the trial court erred by refusing to declare execution by electrocution unconstitutional is moot. See *Dawson v. State*, 274 Ga. 327, 328 (554 SE2d 137) (2001).

## *Voir Dire*

4. At the conclusion of voir dire, Raheem challenged the State's use of its peremptory strikes, alleging that the State had engaged in race discrimination in violation of *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). Because the trial court directed the State to put forward race-neutral reasons for its strikes, the question of whether a prima facie case of discrimination was shown is moot, and the State's proffered reasons should be examined. *Barnes v. State*, 269 Ga. 345, 349 (6) (496 SE2d 674) (1998) (citing *Hernandez v. New York*, 500 U. S. 352, 359 (111 SC 1859, 114 LE2d 395) (1991)). Raheem concedes that the State's proffered reasons were sufficient to demonstrate a lack of discriminatory intent as to all but one of the stricken prospective jurors, juror Smith. With regard to juror Smith, the prosecutor explained that, upon learning in voir dire where the juror attended church, the prosecutor had inquired of members of that church and had received reports that the juror "was odd, that he was strange, that he exhibited some weird personality traits, [and that the church members] wouldn't put him on any kind of a jury." The prosecutor also explained, and the trial court confirmed on the record, that juror Smith had exhibited difficulty hearing in court. There is no merit to Raheem's contentions that the State's proffered reasons relied upon racial stereotypes or were too vague. See *Barnes*, 269 Ga. at 349 (6); *Turner v. State*, 267 Ga. 149, 151 (2) (476 SE2d 252) (1996) (citing *Purkett v. Elem*, 461 U. S. 765 (115 SC 1769, 131 LE2d 834) (1995)). This Court concludes that the trial court's finding that Raheem failed to carry his burden of persuasion in showing that the State had engaged in race discrimination was not clearly erroneous. *Barnes*, 269 Ga. at 349 (6).

5. (a) A prospective juror who would not be able or willing to consider the sentence of life with the possibility of parole upon a conviction for murder is biased in a manner that would make him or her unqualified to serve. *Rhode v. State*, 274 Ga. 377, 380 (6) (552 SE2d 855) (2001) ("[W]here a prospective juror is unable or unwilling, for any reason, to consider one or more of the sentences authorized by law, that juror should be excused for cause upon motion by one of the parties."); see *Zellmer v. State*, 272 Ga. 735 (534 SE2d 802) (2000). The proper standard by which a trial court should examine such potential bias is whether the prospective juror's views would prevent or substantially impair the performance of the juror's duties in accor-

dance with his or her instructions and oath; a trial court's findings with regard to that standard will be afforded due deference on appeal. See *Greene v. State*, 268 Ga. 47, 48 (485 SE2d 741) (1997) (addressing challenged prospective jurors who expressed hesitation about ability or willingness to consider a sentence less than death).

(b) Raheem contends that the trial court erred by refusing to excuse prospective jurors Maxey-Jolley and Brannon on grounds that the jurors allegedly were unable or unwilling to consider a sentence of life with the possibility of parole upon a conviction for murder. Viewing each challenged juror's voir dire as a whole, this Court concludes that the trial court did not abuse its discretion in finding the jurors qualified to serve. Id.

6. Raheem contends that prospective juror Maxey-Jolley was further shown to be unqualified to serve by her voir dire responses regarding her friend who had been murdered and regarding the friend's murderer who, after being sentenced and imprisoned, had stabbed a prison guard and had himself been killed in an attempted escape. Given the juror's responses, viewed as a whole, the trial court did not abuse its discretion in finding that the juror would remain impartial despite her past experience and her honestly expressed concerns about the possible impact of that past experience upon her deliberations. See *Johnson v. State*, 262 Ga. 652-653 (2) (424 SE2d 271) (1993).

## *Guilt/Innocence Phase*

7. During the guilt/innocence phase, the State presented the testimony of Michael Jenkins, who claimed that he and Raheem had been present at both killings but that Raheem had been the triggerman. The State also presented Raheem's videotaped statement, wherein Raheem admitted being present at both killings but denied being the triggerman. At the conclusion of the guilt/innocence phase, the district attorney made reference to the evidence as follows: "[Y]ou remember Michael Jenkins' testimony, and Mustafa Raheem didn't take the stand but you heard his video taped statement. And I submit to you that it ain't true." Raheem moved for a mistrial, on the ground that the district attorney had made a comment upon Raheem's silence at trial, and argued that a curative instruction would not cure the harm allegedly done by the comment. The trial court, which was not urged to do so by Raheem, did not give a curative instruction, however, the trial court did give the following charge to the jury at the conclusion of the parties' closing arguments:

[T]he defendant in a criminal case is under no duty to produce any evidence tending to prove innocence and is not

required to take the stand and testify in the case. If the defendant elects not to testify, no inference hurtful, harmful, or adverse to the defendant shall be drawn by the jury, nor shall such fact be held against the defendant in any way.

As a rule of both constitutional law and Georgia statutory law, a prosecutor may not make any comment upon a criminal defendant's failure to testify at trial. *Griffin v. California*, 380 U. S. 609, 615 (85 SC 1229, 14 LE2d 106) (1965); OCGA § 24-9-20 (b). This rule ensures that the State does not impose "a penalty" for or make "costly" the exercise of the constitutional right to remain silent. 380 U. S. at 614. This Court concludes that this constitutional and statutory rule was violated in this case. See *Drake v. State*, 239 Ga. 232, 236-237 (3) (236 SE2d 748) (1977) (addressing a comment by the trial court and finding the comment "at worst harmless error" under the statute); *Woodard v. State*, 234 Ga. 901, 904-905 (7) (a) (218 SE2d 629) (1975) (addressing whether a trial court's charging a jury *not* to hold a defendant's silence against him constituted impermissible "comment" under the statute and concluding it did not). Nevertheless, upon considering the firsthand observation of the trial court that the comment in question did not appear designed to or likely to urge any negative inference, the strength of the evidence against the defendant, the charge given to the jury by the trial court, and the context in which the comment was made, this Court concludes that the violation here was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U. S. 18 (87 SC 824, 17 LE2d 705) (1967); *Hill v. State*, 250 Ga. 277, 282-283 (4) (a) (295 SE2d 518) (1982).

8. After discovering the body of Miriam Hollis, law enforcement officers followed leads to Raheem's girlfriend, Veronica Gibbs. Officers interviewed Gibbs at her place of employment. She informed the officers that Raheem had been staying with her in her apartment, that Raheem had shown her a woman's body in the trunk of a white Lexus, that Raheem had admitted shooting the woman and her son, that Raheem had "brought some stuff" to her apartment from the dead woman's home, and that the officers could go retrieve the "stuff" from the apartment. Gibbs traveled with the officers and accompanied them as they entered her apartment, never withdrawing her consent to the officers' entry. These facts demonstrate that Gibbs gave consent to the entry into the apartment and reinforce the uncontested fact that the officers had probable cause to arrest Raheem. Gibbs's name was the only name on the lease for the apartment.

A warrant is required for an arrest made inside the arrested person's residence, absent consent or exigent circumstances. *Payton v. New York*, 445 U. S. 573, 583 (100 SC 1371, 63 LE2d 639) (1980);

*Thompson v. State*, 248 Ga. 343 (1) (285 SE2d 685) (1981). However, the warrant requirement does not apply where entry into the arrested person's residence is consented to by a third party who shares common authority over the residence. *Illinois v. Rodriquez*, 497 U. S. 177, 181 (II) (110 SC 2793, 111 LE2d 148) (1990). Here, the trial court correctly found that Gibbs, who had at least common authority over her own apartment, gave valid consent to the officers to enter. Id. Accordingly, the trial court did not err by finding Raheem's arrest was lawful under the Fourth Amendment and by refusing to suppress evidence based on Raheem's argument to the contrary.

9. During the guilt/innocence phase, Raheem renewed his motion to suppress a videotaped statement he had given while in custody, arguing that, assuming he had previously received notice of and had waived his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), the portion of the *Miranda* notice that referred to the potential use of any statement against him in court was vitiated when he allegedly asked if the statement could be used in court and the law enforcement officers present answered negatively. The argument relied upon a difficult to understand portion of the videotaped statement, wherein Raheem asked some question and the law enforcement officers present responded negatively.

The trial court reviewed the relevant portion of the videotape several times and heard testimony from the law enforcement officers present when the videotaped statement was made. Detective Rene Swanson testified that, prior to the taking of his videotaped statement, Raheem had been allowed to watch the interview of his girlfriend, Veronica Gibbs, from a nearby "recording room." Detective Swanson then testified that she believed that, in the relevant portion of the videotaped statement, Raheem asked if there was "anybody in the recording room." Sergeant Michael Gaddis also testified that Raheem had said "something in reference to the recording room" in the relevant portion of the videotape. Raheem testified that he did not know what he had said on the videotape, but he denied that he had said anything about the recording room. The trial court found as follows: "[T]here is no evidence that whatever inquiry the defendant was making at the time in question was any inquiry as to whether or not his statement would be used in court, or a courtroom."

A trial court's findings of fact with regard to a motion to suppress are accepted as correct on appeal unless clearly erroneous, except in cases "where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented. . . ." *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994). Here, the relevant portion of Raheem's videotaped statement was difficult, if not impossible, to understand, as is shown by Raheem's failure to

understand his own words after hearing them played repeatedly in the courtroom. Under these circumstances and given the testimony heard by the trial court, this Court concludes that the trial court's finding that Raheem had not made any reference to whether his statement could be used in a courtroom was not clearly erroneous. Accordingly, Raheem's legal argument premised on a factual assertion to the contrary must fail.

### Sentencing Phase

10. During the sentencing phase, the State objected to the detailed testimony of a psychiatrist, who had treated Raheem as a child, about the psychiatrist's efforts to secure further psychiatric treatment for Raheem in the face of an insurance company's refusal to allow such treatment. In ruling on the objection, the trial court stated as follows: "[P]roceed on but let's try to maintain some relevancy to the testimony. It may be there, I just haven't heard it yet. But it just seems like we're going into a great deal of detail about it." Because Raheem did not move for a mistrial, his complaint regarding the statement has been waived. *Paul v. State*, 272 Ga. 845, 848 (2) (537 SE2d 58) (2000). Furthermore, there was nothing objectionable about this reasonable statement made by the trial court in ruling on the State's objection. See *McClain v. State*, 267 Ga. 378, 384 (3) (b) (2) (477 SE2d 814) (1996) ("A judge's remarks assigning a reason for a ruling are neither an improper expression of opinion nor a comment on the evidence."); OCGA § 17-8-57.

11. The certified copy of an adjudication against Raheem in a juvenile proceeding demonstrated sufficiently on its face that it was entered upon Raheem's free and voluntary admission of guilt before the juvenile court with the benefit of counsel, and Raheem offered no evidence in rebuttal. See *Waldrip v. State*, 267 Ga. 739, 751 (21) (b) (482 SE2d 299) (1997); *Hammond v. State*, 260 Ga. 591, 598 (7) (398 SE2d 168) (1990); see also *Nash v. State*, 271 Ga. 281, n. 1 (519 SE2d 893) (1999) ("*Pope* [*v. State*, 256 Ga. 195 (345 SE2d 831) (1986)] remains the controlling authority as to the admission of guilty pleas in the sentencing phase of death penalty cases."); *Pope*, 256 Ga. at 209-210 (17).

### Sentence Review

12. The evidence adduced in the two phases of Raheem's trial was sufficient to enable a rational trier of fact to find beyond a reasonable doubt the existence of the statutory aggravating circumstances supporting the death sentence in this case. *Jackson*, 443 U. S. 307; OCGA § 17-10-35 (c) (2).

13. In the sentencing phase, the State presented evidence show-

ing Raheem had previously carried a weapon on school grounds at age 15 and had stolen an automobile and fled from police at age 17. The State also presented evidence showing that Raheem had concealed in his jail cell several rudimentary weapons and a detailed map of the jail. A Henry County Police Department officer testified that, in a conversation initiated by Raheem, Raheem said the following about the murders: "I had to do what I had to do. It was just business." That same officer testified that, on another occasion, Raheem engaged in misconduct in the jail and then said the following to the officer: "I also know you're a witness in my case, you little snitch. I'll kill you." One of Raheem's fellow inmates at the jail testified that Raheem stated that he was going to have his girlfriend and the district attorney killed and that the district attorney "didn't know who he was messing with." See *Gissendaner v. State*, 272 Ga. 704, 717 (19) (a) (532 SE2d 677) (2000) (noting that "past conduct and conduct after the crime" are relevant in this Court's proportionality review).

This Court finds, considering both the crime and the defendant, that the death penalty in this case was neither excessive nor disproportionate to the penalties imposed in similar cases in this State. OCGA § 17-10-35 (c) (3). The cases appearing in the Appendix support this conclusion in that each involved a defendant shown at trial to have murdered more than one person.

14. This Court finds that the sentence of death in this case was not imposed under the influence of passion, prejudice, or any other arbitrary factor. OCGA § 17-10-35 (c) (1).

*Judgment affirmed. All the Justices concur.*

APPENDIX.

*Lance v. State*, 275 Ga. 11 (560 SE2d 663) (2002); *Lucas v. State*, 274 Ga. 640 (555 SE2d 440) (2001); *Rhode v. State*, 274 Ga. 377 (552 SE2d 855) (2001); *Colwell v. State*, 273 Ga. 634 (544 SE2d 120) (2000); *Heidler v. State*, 273 Ga. 54 (537 SE2d 44) (2000); *Morrow v. State*, 272 Ga. 691 (532 SE2d 78) (2000); *Pace v. State*, 271 Ga. 829 (524 SE2d 490) (1999); *Palmer v. State*, 271 Ga. 234 (517 SE2d 502) (1999); *Cook v. State*, 270 Ga. 820 (514 SE2d 657) (1999); *Jenkins v. State*, 269 Ga. 282 (498 SE2d 502) (1998); *DeYoung v. State*, 268 Ga. 780 (493 SE2d 157) (1997); *Raulerson v. State*, 268 Ga. 623 (491 SE2d 791) (1997); *McMichen v. State*, 265 Ga. 598 (458 SE2d 833) (1995); *Stripling v. State*, 261 Ga. 1 (401 SE2d 500) (1991); *Isaacs v. State*, 259 Ga. 717 (386 SE2d 316) (1989); *Ford v. State*, 257 Ga. 461 (360 SE2d 258) (1987); *Childs v. State*, 257 Ga. 243 (357 SE2d 48) (1987); *Romine v. State*, 256 Ga. 521 (350 SE2d 446) (1986); *Cargill v. State*, 255 Ga. 616 (340 SE2d 891) (1986); *Blanks v. State*, 254 Ga. 420 (330 SE2d 575) (1985); *Putman v. State*, 251 Ga. 605 (308 SE2d 145)

(1983); *Wilson v. State,* 250 Ga. 630 (300 SE2d 640) (1983); *Rivers v. State,* 250 Ga. 303 (298 SE2d 1) (1982); *Rivers v. State,* 250 Ga. 288 (298 SE2d 10) (1982); *Waters v. State,* 248 Ga. 355 (283 SE2d 238) (1981).

DECIDED MARCH 11, 2002 —
RECONSIDERATION DENIED APRIL 10, 2002.

*Crumbley & Crumbley, Wade M. Crumbley,* for appellant.
*Tommy K. Floyd, District Attorney, James L. Wright III, Blair D. Mahaffey, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Romin Alavi, Assistant Attorney General,* for appellee.