## S03P1479. SEALEY v. THE STATE.
(593 SE2d 335)

THOMPSON, Justice.

A jury found Richard Lester Sealey guilty of the malice murders of John and Fannie Mae Tubner and 17 related crimes. The jury recommended a death sentence for the murders, after finding beyond a reasonable doubt that the murders were both outrageously or wantonly vile, horrible, or inhuman in that they involved the torture of the victims, depravity of mind, and the aggravated battery of the victims, that the murders were both committed for the purpose of receiving money or any other thing of monetary value, that the murder of Mr. Tubner was committed while Sealey was engaged in the capital felonies of armed robbery and aggravated battery, and that the murder of Ms. Tubner was committed while Sealey was engaged in the capital felonies of armed robbery, aggravated battery, and kidnapping with bodily injury. See OCGA § 17-10-30 (b) (2), (4), and (7). The trial court sentenced Sealey to death and terms of imprisonment. For the reasons set forth below, we affirm Sealey's convictions and sentences.[1]

1. The evidence at the guilt/innocence phase, construed in the light most favorable to the jury's verdict, showed the following. Sealey contacted his friend Gregory Fahie by telephone asking for a ride. Fahie asked his friend, Wajaka Battiste, to drive to Sealey's motel and then to drive Fahie and Fahie's juvenile girlfriend, Deandrea

---

[1] The crimes occurred on January 23, 2000. Sealey was indicted by a Clayton County grand jury on February 7, 2001, on two counts of malice murder, fourteen counts of felony murder, two counts of possession of a firearm during the commission of a crime, and one count of possession of a firearm by a convicted felon. The State filed written notice of its intent to seek the death penalty on February 8, 2001. The trial began on August 12, 2002, the jury convicted Sealey on all counts on August 23, 2002, and the jury recommended a death sentence for the murders on August 27, 2002. The trial court imposed death sentences for the two malice murders and imposed three five-year prison terms to run consecutively to the death sentences and concurrently with each other for the two counts of possession of a firearm during the commission of a crime and the one count of possession of a firearm by a convicted felon. The trial court properly imposed no sentences on the felony murder convictions, which are vacated as a matter of law. *Malcolm v. State*, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993). Sealey filed a motion for new trial on September 24, 2002, which was denied in an order filed on May 1, 2003. Sealey filed a timely notice of appeal on May 6, 2003, this case was docketed in this Court on June 23, 2003, and the case was orally argued on October 20, 2003.

Carter, to Carter's grandparents' house. Upon arriving at Carter's grandparents' house, Sealey, Carter, and Fahie went inside, while Battiste waited in the car listening to music. While he was in a downstairs bathroom, Fahie first heard a loud noise and then heard Carter knocking on the bathroom door and stating that Sealey was "tripping." Fahie exited the bathroom and observed Mr. Tubner lying in a pool of blood and Sealey holding Ms. Tubner down and wielding a handgun he had taken from Mr. Tubner. Sealey dragged Ms. Tubner, who had been bound with duct tape, to an upstairs bedroom. Sealey instructed Fahie to search for money, however, when no money was discovered, Sealey instructed Carter to heat a fireplace poker with which Sealey tortured Ms. Tubner in an effort to force her to reveal where she kept her money. Sealey then instructed Carter to find a hammer so he could kill the victims. Carter returned with an ax. Sealey struck Ms. Tubner multiple times in the head with the ax and then went downstairs and did the same to Mr. Tubner, who had crawled a short distance across the living room. Once back in Battiste's automobile, Sealey stated that he "had to do it" because the victims had seen their faces and further stated that the victims deserved to die because they had mistreated Carter's mother in the past. Sealey instructed Battiste never to reveal that he had seen Sealey and then added, "I will out your lights."

The evidence presented in the guilt/innocence phase included the testimony of Fahie and Battiste, Mr. Tubner's handgun and jewelry that had been discovered in Sealey's motel room, and testimony about the detection of protein residue consistent with blood on the floor and sink of Sealey's motel bathroom. Upon our review of the entire record, we conclude that the evidence presented in the guilt/innocence phase was sufficient to authorize rational jurors to conclude beyond a reasonable doubt that Sealey was guilty on all counts. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

### Pre-Trial

2. Sealey contends that his indictment was invalid under Georgia statutory law because the jury commissioners excluded some persons from grand jury service based on their levels of education in an attempt to comply with the statutory directive that grand jurors be selected from "the most experienced, intelligent, and upright citizens of the county." OCGA § 15-12-40 (a) (1). Contrary to Sealey's statement in his oral argument that the jury commissioners required a high school education for grand jury service, our review of the record reveals that Sealey failed to present evidence clearly showing what educational requirement was applied. In fact, the testimony actually elicited indicated nothing more specific than that the commissioners

had required prospective grand jurors to "have a third-grade education or something." The testimony also indicated that each prospective grand juror removed as a candidate for the grand jury source list was replaced with a candidate from the same race and sex categories. Under the facts in evidence in this case, we decline to depart from our previous position that, unlike *constitutional* requirements, " 'the *statutory* procedures for creating the [grand jury] list are merely directory,' and do not create a basis for sustaining challenges to the array." (Emphasis supplied.) *Frazier v. State*, 257 Ga. 690, 691 (2) (362 SE2d 351) (1987) (quoting *Dillard v. State*, 177 Ga. App. 805, 807 (341 SE2d 310) (1986)).

3. Sealey further contends that the source lists from which his grand and traverse juries were drawn unlawfully under-represented Hispanic persons. This claim must fail on appeal, as Sealey failed to present evidence showing Hispanic persons constituted a cognizable group in the county or any evidence establishing either the existence of actual under-representation or the degree thereof. *Ramirez v. State*, 276 Ga. 158, 159-162 (1), (2) (575 SE2d 462) (2003). There is also no reversible error arising out of the jury commission's reliance on the most recently available census in creating its source lists as the Unified Appeal Procedure directs. Id. at 160-162 (1) (b), (c); *Smith v. State*, 275 Ga. 715, 719 (3) (571 SE2d 740) (2002); U.A.P. II (C) (6).

4. Sealey argues that the entire office of the district attorney should have been disqualified because one assistant district attorney, while previously in private practice, had represented Sealey in two unrelated criminal cases. Because the record confirms that the assistant district attorney was properly "screened from any direct or indirect participation" in Sealey's prosecution in this case, the trial court did not err in allowing other members of the district attorney's office to continue in the case. *Frazier*, 257 Ga. at 693-694 (9).

*Jury Selection*

5. Upon our review of juror Delgado's entire voir dire, we conclude that the trial court did not abuse its discretion by limiting questions regarding legal terms and questions appearing to seek a prejudgment of the case. *Sallie v. State*, 276 Ga. 506, 509-510 (3) (578 SE2d 444) (2003). The juror's responses sufficiently indicate the juror's willingness to consider all three possible sentences upon a conviction for murder when those responses are read in the light of the trial court's initial instructions and of the entirety of the questioning of the juror by the trial court and the parties. See *Rhode v. State*, 274 Ga. 377, 380 (6) (552 SE2d 855) (2001); *Zellmer v. State*, 272 Ga. 735 (534 SE2d 802) (2000). Likewise, the trial court did not abuse its discretion in limiting inquiries into juror McGee's and juror

Eppstaedt's knowledge of legal terms and procedures when other forms of questioning clearly showed the jurors to be qualified. *Sallie*, 276 Ga. at 509-510 (3).

6. The trial court did not abuse its discretion in disallowing questions to jurors Martinez and Chambers that were unrelated to possible juror bias and that attempted to elicit speculative responses from the jurors about how they might conduct themselves in jury deliberations. Id.

7. A defendant is entitled to a full panel of qualified jurors from which the jury will be selected by the use of peremptory strikes. *Lance v. State*, 275 Ga. 11, 15 (8) (560 SE2d 663) (2002); *Lively v. State*, 262 Ga. 510, 512 (2) (421 SE2d 528) (1992). However, Sealey's claim that he was denied such a fully qualified panel, to the extent that claim is intended to address jurors other than those discussed above, has been abandoned by his failure to name those other jurors or to provide relevant citation to the record. Supreme Court Rule 22.

8. Sealey contends that the trial court erred by excusing jurors Trousdale, Adams, Barretto, Wyatt, Neal, Harris, Mosley, and Seise for reasons of personal hardship. Upon our review of the record, we conclude that the trial court did not abuse its discretion, which it possessed in addition to its statutory duty to grant excusals under certain circumstances, in excusing those jurors. *Gulley v. State*, 271 Ga. 337, 344 (7) (519 SE2d 655) (1999); see OCGA § 15-12-1 (a) (2), (3); but see *Holsey v. State*, 271 Ga. 856, 858-859 (2) (524 SE2d 473) (1999) (decided prior to amendment adding sections (a) (2) and (a) (3) to OCGA § 15-12-1).

9. Our review of the record does not support Sealey's contention that the trial court conducted voir dire in a biased manner. See *King v. State*, 273 Ga. 258, 267 (21) (539 SE2d 783) (2000); *Ledford v. State*, 264 Ga. 60, 64 (6) (c) (439 SE2d 917) (1994).

## *Guilt/Innocence Phase*

10. The trial court did not err in excluding evidence regarding a polygraph examination administered to Sherrie Tubner, Carter's aunt. The fact that Ms. Tubner entered into a stipulation with the State as to the admissibility of the results of her polygraph examination in any proceeding against *her* is irrelevant to the admissibility of those results in Sealey's trial, and Sealey had no similar stipulation with the State of his own regarding those results. *Rucker v. State*, 272 Ga. 750, 751-752 (1) (534 SE2d 71) (2000); *Walker v. State*, 264 Ga. 79, 80 (2) (440 SE2d 637) (1994).

11. The trial court did not err in refusing to bifurcate the possession of a firearm by a convicted felon charge from the remaining charges, because it was possible that the jury would, as they ulti-

mately did, convict Sealey of felony murder with the possession crime serving as the underlying felony. *Jones v. State*, 265 Ga. 138-141 (2) (454 SE2d 482) (1995).

### Sentencing Phase

12. The trial court did not err in admitting evidence in the sentencing phase showing that Sealey had illegally used a man's credit card shortly after the man's murder. "[R]eliable evidence of bad character and of past crimes is admissible in the sentencing phase of a death penalty trial." *Braley v. State*, 276 Ga. 47, 54 (34) (572 SE2d 583) (2002); *Wilson v. State*, 271 Ga. 811, 822-823 (20) (525 SE2d 339) (1999). The evidence of Sealey's illegal use of the man's credit card was clearly reliable, and we conclude from our review of the record that the connection between Sealey and the man's murder was sufficiently reliable to allow evidence of the murder to be presented to the jury. Furthermore, although the charge was erroneous, we also note that the jury was charged that it was not permitted to consider non-statutory aggravating circumstances unless they were first proven beyond a reasonable doubt. See *Wilson*, 271 Ga. at 822 (20).

### Sentence Review

13. The evidence presented at trial was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt the existence of the statutory aggravating circumstances in this case. OCGA § 17-10-35 (c) (2); *Jackson*, 443 U. S. 307.

14. Upon our review of the record, we conclude that the sentences of death in this case were not imposed under the influence of passion, prejudice, or any other arbitrary factor. OCGA § 17-10-35 (c) (1).

15. Considering both the defendant and the clearly egregious facts of this torture and double murder case, we conclude that Sealey's death sentences are not excessive or disproportionate punishment as compared to the penalty imposed in similar cases. OCGA § 17-10-35 (c) (3). The cases appearing in the Appendix support this conclusion in that each involved a multiple murder.

*Judgment affirmed. All the Justices concur.*

### APPENDIX.

*Arevalo v. State*, 275 Ga. 392 (567 SE2d 303) (2002); *Raheem v. State*, 275 Ga. 87 (560 SE2d 680) (2002); *Lucas v. State*, 274 Ga. 640 (555 SE2d 440) (2001); *Rhode v. State*, 274 Ga. 377 (552 SE2d 855) (2001); *Colwell v. State*, 273 Ga. 634 (544 SE2d 120) (2001); *Heidler v. State*, 273 Ga. 54 (537 SE2d 44) (2000); *Morrow v. State*, 272 Ga. 691

(532 SE2d 78) (2000); *Pace v. State*, 271 Ga. 829 (524 SE2d 490) (1999); *Palmer v. State*, 271 Ga. 234 (517 SE2d 502) (1999); *Cook v. State*, 270 Ga. 820 (514 SE2d 657) (1999); *Jenkins v. State*, 269 Ga. 282 (498 SE2d 502) (1998); *DeYoung v. State*, 268 Ga. 780 (493 SE2d 157) (1997); *Raulerson v. State*, 268 Ga. 623 (491 SE2d 791) (1997); *McMichen v. State*, 265 Ga. 598 (458 SE2d 833) (1995); *Stripling v. State*, 261 Ga. 1 (401 SE2d 500) (1991); *Isaacs v. State*, 259 Ga. 717 (386 SE2d 316) (1989).

DECIDED MARCH 1, 2004.

*John A. Beall IV*, for appellant.

*Robert E. Keller, District Attorney, Todd E. Naugle, Assistant District Attorney, Thurbert E. Baker, Attorney General, Sabrina D. Graham, Assistant Attorney General*, for appellee.

