### S06P0675. WILLIAMS v. THE STATE.
(635 SE2d 146)

HINES, Justice.

Joseph Williams was indicted for malice murder and felony murder in connection with the death of Michael Deal.[1] Williams pled guilty to malice murder, and the trial court, on the State's motion, entered an order of nolle prosequi as to the felony murder charge. At the conclusion of a sentencing trial, the jury fixed Williams's sentence

---

[1] The murder occurred on July 24, 2001. Williams was indicted by a Chatham County grand jury on October 31, 2001. The State filed written notice of its intent to seek the death penalty on March 11, 2002. Jury selection began on March 29, 2004, Williams pled guilty to malice murder on April 5, 2004, and the jury sentenced Williams to death on April 7, 2004. Williams filed a motion for new trial on April 20, 2004, which he amended on July 19, 2005, and which the trial court denied on August 26, 2005. Williams filed a notice of appeal on September 21, 2005, which was docketed in this Court on December 21, 2005, and was orally argued on April 10, 2006.

at death after finding beyond a reasonable doubt the following statutory aggravating circumstances: the murder was committed by a person in a place of lawful confinement; and the murder was committed by a person with a prior record of conviction for a capital felony. See OCGA § 17-10-30 (b) (1), (9). For the reasons set forth below, this Court affirms the sentence imposed.

1. The evidence adduced in Williams's sentencing trial showed that on July 24, 2001, Williams was a jail inmate at the Chatham County Detention Center. See OCGA § 17-10-30 (b) (9) ("murder was committed by a person in, or who has escaped from, the lawful custody of a peace officer or place of lawful confinement"). Seven other inmates, including Michael Deal, were being held in the same unit as Williams. Williams and four of the other inmates, Leon McKinney, Pierre Byrd, Michael Wilson, and John McMillan, discovered a loose window and used an improvised chisel to chip away at the wall around it. Deal inquired what the men were doing but left when he was told "to mind his own business." Williams and other inmates began to suspect that Deal had informed, or was going to inform, the jail authorities about the escape plan. McKinney suggested stabbing Deal with the improvised chisel, but Williams objected that there would be too much blood and that their plan would be frustrated. The group then carried out an alternative plan to strangle Deal and make the killing appear to be a suicide. McKinney engaged Deal in a discussion about their relative body sizes and then, facing Deal, lifted him in a "bear hug." Williams then began strangling Deal from behind with an Ace bandage. Deal fell to the floor but did not immediately lose consciousness. The evidence is unclear whether it was Wilson or Byrd, but one of those two men then assisted Williams by taking one end of the Ace bandage and completing the strangulation in a "tug-of-war." Byrd invited Anthony King, an inmate who had been friendly with Deal, into Byrd's cell to distract King as Deal's body was moved. Williams then dragged Deal's body to Deal's cell, flushed the Ace bandage down the toilet, cleaned up blood and hair on the floor with a rag, flushed the rag, tied a bed sheet around Deal's neck, and finally, with the assistance of McKinney and McMillan, lifted Deal's body and tied the bed sheet to a grate in the ceiling to make the death appear to be a suicide. After the murder, Williams and Byrd favored also killing King and Dewey Anderson, but McKinney and McMillan objected. Byrd, later troubled by dreams about the victim, contacted his attorney, passed a note about the murder to a jail guard, and then directed authorities to the improvised chisel, the loosened window, and a letter about the murder written to him by Williams. Williams confessed in an audiotaped interview conducted by a GBI agent.

In support of the OCGA § 17-10-30 (b) (1) aggravating circumstance, the State presented three certified convictions of Williams,

one for the armed robbery of Harry Jaymes, one for the murder of Iris Hall, and one for the murder of Taureen Graham. The State also presented testimony regarding those three crimes. Harry Jaymes testified that Williams delivered some stereo equipment, that he gave Williams a cash gratuity from a bag of money, and that Williams returned with an accomplice two days later on May 27, 1999, hit Jaymes in the head repeatedly with a handgun, and threatened to kill Jaymes if he did not reveal where the bag of money was. Jaymes escaped, threw a brick through his car's window to set off the alarm, and had a neighbor call police. A GBI agent testified that Williams confessed during an audiotaped statement, which was played for the jury, to the murders of Taureen Graham and Iris Hall. Williams explained in the statement that he had been hired to murder Taureen Graham's older brother but that, on July 31, 1999, he murdered the wrong person. Janet Cooper testified that, during a drug deal on July 11, 1999, Williams held Cooper and Iris Hall at gunpoint, placed Cooper in a bathroom, and searched Hall's house. As Cooper escaped from the bathroom window, she heard the shots that killed Hall. At Williams's trial for Hall's murder, Williams "made slashing gestures and gunshot gestures" toward Cooper. Williams later, in March 2004, gave a letter to Cooper in which he stated, "I've killed many men before that incident, even killed a couple afterwards." The letter continued as follows:

> August will be an even five years of incarceration for me. In those five years, I've killed two men, slit an officer's throat with a razor, stabbed two inmates, and whipped my first lawyer's ass. I am who I am, Janet. Those walls can't stop me.

The evidence also showed that Williams had committed several other criminal acts. A criminal defense attorney testified that Williams struck him repeatedly during a jailhouse interview on September 28, 2001. A prison guard testified that Williams slashed his face and throat with a razor blade embedded in a newspaper on December 17, 2001. Testimony from two prison officers to whom Williams confessed and testimony from the surviving victim showed that Williams murdered one prison inmate and repeatedly stabbed another with an improvised weapon on January 26, 2003. In his audiotaped confession about the 2003 prison attack, Williams stated that he had also planned to kill a third inmate that day but the man's cell door had been locked.

2. Viewed in the light most favorable to the verdict, this Court finds that the evidence adduced at trial was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt the existence

of the statutory aggravating circumstances in this case. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); OCGA § 17-10-35 (c) (2).

3. Williams contends that lethal injection is cruel and unusual punishment and, as such, violates the Georgia Constitution and the Constitution of the United States. See *Dawson v. State*, 274 Ga. 327 (554 SE2d 137) (2001) (declaring that execution by electrocution violates the Georgia Constitution). Williams successfully moved the trial court pre-trial to consider evidence from a previous death penalty case, which served as the basis for a previous challenge to lethal injection that was rejected by this Court. See *Nance v. State*, 280 Ga. 125, 127 (4) (623 SE2d 470) (2005). During the pendency of Williams's motion for new trial, the State entered into a stipulation allowing the admittance of additional evidence from another death penalty case, a case that addressed a revised version of Georgia's execution protocol. The trial court denied both Williams's pre-trial motion regarding lethal injection and the portion of his amended motion for new trial addressing lethal injection. Williams has failed to identify any particular aspect of the evidence admitted in the trial court that would require this Court to depart from its prior decisions holding lethal injection to be a constitutional form of execution. See id.; *Lewis v. State*, 279 Ga. 756, 766 (17) (620 SE2d 778) (2005); *Riley v. State*, 278 Ga. 677, 689 (15) (604 SE2d 488) (2004).

Because Williams was permitted, both pre-trial and as part of his amended motion for new trial, to introduce evidence on the subject of lethal injection and because he has not shown on appeal that the trial court denied any request to present additional evidence on that subject, this Court denies his motion to remand.

4. To the extent Williams seeks review of the denial of his other motions challenging Georgia's death penalty statutes, this Court finds that such additional claims are "so lacking in specific argument that they are incapable of being meaningfully discussed" and are, therefore, deemed abandoned. *Head v. Hill*, 277 Ga. 255, 269 (VI) (A) (587 SE2d 613) (2003). See Supreme Court Rule 22.

5. The evidence at trial, summarized above, showed that Williams had murdered at least four persons and had attempted or planned to murder several others. Considering both the crime and the defendant, this Court concludes that Williams's death sentence was neither excessive nor disproportionate to the penalties imposed in similar cases in Georgia. See OCGA § 17-10-35 (c) (3). The cases cited in the Appendix support this finding in that each also involved evidence that the defendant murdered multiple persons, either in one transaction or, as in Williams's case, in several transactions. See OCGA § 17-10-35 (e).

6. Upon a review of the trial record, this Court concludes that Williams's death sentence was not imposed under the influence of passion, prejudice, or any other arbitrary factor. See OCGA § 17-10-35 (c) (1).

*Judgment affirmed. All the Justices concur.*

APPENDIX.

*Lewis v. State*, 279 Ga. 756 (620 SE2d 778) (2005); *Riley v. State*, 278 Ga. 677 (604 SE2d 488) (2004); *Franks v. State*, 278 Ga. 246 (599 SE2d 134) (2004); *Sealey v. State*, 277 Ga. 617 (593 SE2d 335) (2004); *Arevalo v. State*, 275 Ga. 392 (567 SE2d 303) (2002); *Raheem v. State*, 275 Ga. 87 (560 SE2d 680) (2002); *Lance v. State*, 275 Ga. 11 (560 SE2d 663) (2002); *Lucas v. State*, 274 Ga. 640 (555 SE2d 440) (2001); *Rhode v. State*, 274 Ga. 377 (552 SE2d 855) (2001); *Colwell v. State*, 273 Ga. 634 (544 SE2d 120) (2000); *Esposito v. State*, 273 Ga. 183 (538 SE2d 55) (2000); *Heidler v. State*, 273 Ga. 54 (537 SE2d 44) (2000); *Morrow v. State*, 272 Ga. 691 (532 SE2d 78) (2000); *Pace v. State*, 271 Ga. 829 (524 SE2d 490) (1999); *Gulley v. State*, 271 Ga. 337 (519 SE2d 655) (1999); *Palmer v. State*, 271 Ga. 234 (517 SE2d 502) (1999); *Cook v. State*, 270 Ga. 820 (514 SE2d 657) (1999); *Jenkins v. State*, 269 Ga. 282 (498 SE2d 502) (1998); *DeYoung v. State*, 268 Ga. 780 (493 SE2d 157) (1997); *Raulerson v. State*, 268 Ga. 623 (491 SE2d 791) (1997); *McMichen v. State*, 265 Ga. 598 (458 SE2d 833) (1995); *Ferrell v. State*, 261 Ga. 115 (401 SE2d 741) (1991); *Stripling v. State*, 261 Ga. 1 (401 SE2d 500) (1991); *Gary v. State*, 260 Ga. 38 (389 SE2d 218) (1990).

DECIDED SEPTEMBER 18, 2006 —
RECONSIDERATION DENIED OCTOBER 16, 2006.

*Michael L. Edwards, Zipperer, Lorberbaum & Beauvais, Steven Beauvais*, for appellant.

*Spencer Lawton, Jr., District Attorney, David T. Lock, Thomas M. Cerbone, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Elizabeth A. Burton, Kristin S. White, Assistant Attorneys General*, for appellee.