## S10P0477. TATE v. THE STATE.
### (695 SE2d 591)

BENHAM, Justice.

Chrissie Williams and her three-year-old daughter, Katelyn Williams, were found dead in their home. Chrissie Williams was found bound to a bed with handcuffs and duct tape, and she had a bullet wound to her head. Katelyn Williams was found naked on the floor of another room, and her throat had been slit. Nicholas Cody Tate pleaded guilty to both murders and to related crimes, and he waived his right to a jury trial as to sentencing for the murders.[1] At

---

[1] The crimes occurred on December 11, 2001. Tate was indicted by a Paulding County grand jury on February 20, 2002, on two counts of malice murder, eight counts of felony murder, five counts of aggravated assault, two counts of kidnapping, four counts of burglary, one count of conspiracy to commit armed robbery, two counts of cruelty to children in the first degree, two counts of possession of a firearm during the commission of a felony, two counts of false imprisonment, and one count of child molestation. The State filed written notice of its intent to seek the death penalty on July 8, 2003. On November 15, 2005, Tate pleaded guilty to eight of the twenty-nine charges against him, including the two counts of malice murder. Tate waived his right to a jury trial on sentencing for the murders, and a bench trial was conducted from November 28 to December 2, 2005. On December 19, 2005, the trial court sentenced Tate to death for each of the murders and to the following terms of imprisonment for the remaining counts to which Tate pleaded guilty, each to be served consecutively: two life terms for each of the two counts of kidnapping; ten years for conspiracy to commit armed robbery; ten years for child molestation; fifteen years for cruelty to children in the first degree;

the conclusion of a bench trial on sentencing, the trial court found the existence of multiple statutory aggravating circumstances and sentenced Tate to death for each of the murders. See OCGA § 17-10-30 (b). For the reasons set forth below, we affirm Tate's convictions and sentences.

### Guilty Pleas

1. Tate argues that his guilty pleas to the two counts of kidnapping and the one count of child molestation were not supported by a showing of a sufficient factual basis and, therefore, that those pleas were taken in violation of Uniform Superior Court Rule 33.9, which states as follows:

> Notwithstanding the acceptance of a plea of guilty, judgment should not be entered upon such plea without such inquiry on the record as may satisfy the judge that there is a factual basis for the plea.

Tate also argues that the alleged lack of a showing of a factual basis for these contested pleas also renders those pleas unconstitutional. We reject Tate's arguments because, as we discuss below, we find no merit[2] to Tate's assertion that there was a lack of a factual basis shown to the trial court in the plea hearing for these contested pleas.

(a) Tate argues that the factual basis for his guilty pleas to the two kidnapping counts was inadequate because the movement of the victims was not of a character that can satisfy the asportation element of the crime of kidnapping. The question of whether the factual basis for his plea correlated with the elements of the crime of kidnapping must be examined in light of the statutory definition of kidnapping that was in force at the time of Tate's crimes rather than the broader definition of kidnapping established by the recent amendment to the kidnapping statute by the General Assembly. See OCGA § 16-5-40 (defining kidnapping); Ga. L. 2009, p. 88, § 1 (altering the definition of kidnapping); *Dixon v. State*, 300 Ga. App. 183, 184, n. 3 (684 SE2d 679) (2009) ("[B]ecause the amendment [to

---

and five years for possession of a firearm during the commission of a felony. Tate filed a motion for a new sentencing trial on January 18, 2006, which the trial court allowed withdrawn in an order filed on July 7, 2009. Tate filed a notice of appeal on August 6, 2009, the appeal was docketed on November 30, 2009, for the January 2010 term of this Court, and the case was orally argued on March 8, 2010.

[2] Because we find that a sufficient factual basis was found by the trial court during the plea hearing itself, we need not address Tate's claims under the more demanding "manifest injustice" standard that is applied where a reviewing court determines that there was *not* a sufficient factual basis found by the trial court at the plea hearing. See *Wharton v. Henry*, 266 Ga. 557 (2) (469 SE2d 27) (1996); *State v. Evans*, 265 Ga. 332 (3) (454 SE2d 468) (1995).

the kidnapping statute] applies to crimes committed on or after the revision's effective date of July 1, 2009, it is inapplicable here. . . ."). This Court has created a four-part test for whether the movement of a victim satisfies the element of asportation within the meaning of the statutory definition of kidnapping that was in force at the time of Tate's crimes. *Garza v. State*, 284 Ga. 696 (1) (670 SE2d 73) (2008). The factors in that four-part test are the following:

> (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.

Id. at 702 (1). The factual basis shown to the trial court for Tate's guilty pleas, including Tate's videotaped interrogation,[3] correlated sufficiently with the definition of kidnapping imposed by this four-part test. Although the movement of both victims spanned a relatively-short duration and occurred while most of the other offenses were ongoing or not yet committed, the movement "was not an inherent part" of any of the other offenses, and the movement "created an additional danger to the victims by enhancing the control of the [Tate brothers] over them." *Henderson v. State*, 285 Ga. 240 (5) (675 SE2d 28) (2009).

(b) The strongest portion of the factual basis for Tate's guilty plea to child molestation[4] was his own statement in the plea hearing that he himself had undressed Katelyn Williams for the purpose of his sexual arousal. Tate argues that this statement by him at his plea hearing was contradicted by previous statements by himself and his

---

[3] During its presentation of a factual basis for Tate's guilty plea, the State provided a brief account of the crimes, but it also made specific reference to Tate's videotaped interrogation, which the trial court had reviewed during pre-trial proceedings. We conclude that the trial court, in accepting Tate's guilty plea, "tacitly agreed with the prosecutor regarding the court's familiarity" with Tate's videotaped interrogation as being part of the factual basis for Tate's plea. *Adams v. State*, 285 Ga. 744 (4) (a) (683 SE2d 586) (2009). Whether or not, as is discussed further below, the trial court had previously ruled correctly pre-trial in concluding that the videotaped interrogation would be admissible by the State as evidence at trial is irrelevant to Tate's guilty plea, because the showing of a factual basis for a plea need not be done through admissible evidence. See, e.g., *Adams*, 285 Ga. at 747 (4) (a) (factual basis for a plea shown through the trial judge's familiarity with the co-defendant's case); *Green v. State*, 265 Ga. 263 (2) (454 SE2d 466) (1995) (considering facts alleged in the indictment as part of a showing of the factual basis for a plea).

[4] See OCGA § 16-6-4 ("A person commits the offense of child molestation when such person . . . [d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person. . . .").

co-defendants. However, the requirement that a factual basis be shown for a plea "is to protect against someone pleading guilty when that person may know what he has done but may not know that those acts do not constitute the crime with which he is charged." *State v. Evans*, 265 Ga. 332 (2) (454 SE2d 468) (1995). In assessing the factual basis for a plea, the trial court "need not make itself aware of evidence establishing the pleader's guilt beyond a reasonable doubt. . . ." *King v. Hawkins*, 266 Ga. 655, 656 (469 SE2d 30) (1996). Accordingly, we conclude that the factual basis for Tate's guilty plea to the one count of child molestation was adequate, despite the existence of several contradictory accounts of the crimes that had been given previously by Tate and his brothers.

*Sentencing Trial*

2. The trial court denied Tate's pre-trial motion to suppress his videotaped interrogation. Despite the fact that the videotape is marked in the record as an exhibit of the State, a review of the sentencing trial record reveals that the videotape was actually introduced by Tate during his cross-examination of a witness for the State. Accordingly, we conclude that Tate has waived the right to complain on appeal about the introduction of the videotape as evidence at his sentencing trial. See *Anderson v. State*, 286 Ga. 57 (6) (685 SE2d 716) (2009).

3. As was discussed above, the actions that Tate participated in constituted kidnapping within the meaning of the kidnapping statute that was in force at the time of his crimes. See *Henderson*, 285 Ga. at 244 (5). Accordingly, there is also no merit to his argument that the trial court erred by finding the existence of statutory aggravating circumstances based on the kidnappings of the two victims. See OCGA § 17-10-30 (b) (2).

4. The evidence showed that Nicholas Tate directed Chad Tate, his 15-year-old brother, to silence Katelyn Williams, who was only three years old. Chad Tate emerged from the room where he had strangled the child with a telephone cord, likely with his hands showing obvious signs of what he had done. When the child regained consciousness and began screaming again, Nicholas Tate, who had initially sent Chad to silence the child, allowed Chad Tate to take his knife and to return to the room where the child was. The evidence also showed that Nicholas Tate had been intent upon eliminating potential witnesses and that Katelyn Williams had recognized him and had called him by name. Both Chad and Nicholas Tate's pants were shown to have been stained with Katelyn Williams's blood. The trial court, acting as the finder of fact, was authorized to find that Nicholas Tate directed his young brother to murder the child. As we

have held, one "who directs a follower or lackey to commit murder" is guilty of the statutory aggravating circumstance addressing persons who cause or direct another to commit murder as an agent or employee. *Mize v. State*, 269 Ga. 646 (14) (501 SE2d 219) (1998) (construing OCGA § 17-10-30 (b) (6)). Accordingly, we find no merit to Tate's argument that the trial court erred by finding the existence of the statutory aggravating circumstance addressing one who has directed another to murder as his or her agent or employee. See OCGA § 17-10-30 (b) (6).

5. Tate argues that the statutory aggravating circumstances concerning armed robbery in his case are invalid because, despite overwhelming evidence that he attempted to steal things from the victims' home, there was not evidence sufficient to prove beyond a reasonable doubt that he succeeded in actually stealing anything. We find no error, because a murder may be found to have been committed while the murderer was "engaged in the commission" of an armed robbery even if the attempted armed robbery fails or is otherwise abandoned. OCGA § 17-10-30 (b) (2). See *Amadeo v. State*, 243 Ga. 627, 631 (255 SE2d 718) (1979) (construing OCGA § 17-10-30 (b) (2)).

6. There is no merit to Tate's argument that the one armed robbery cannot serve as a statutory aggravating circumstance for both of the murders. See *Isaacs v. State*, 259 Ga. 717 (43) (a) (386 SE2d 316) (1989).

7. Tate argues that this Court's rule against "mutually supporting aggravating circumstances" has been violated by the trial court's finding that Chrissie Williams was murdered during the commission of the murder of Katelyn Williams and that Katelyn Williams was murdered during the commission of the murder of Chrissie Williams. Even if, pursuant to this Court's rule against "mutually supporting aggravating circumstances," we were to set aside one of the statutory aggravating circumstances in question, there would remain sufficient statutory aggravating circumstances to support both of the two death sentences in this case. See *Zant v. Stephens*, 462 U. S. 862 (103 SC 2733, 77 LE2d 235) (1983); *Lance v. State*, 275 Ga. 11 (25) (560 SE2d 663) (2002). Thus, pretermitting whether this Court's rule against "mutually supporting aggravating circumstances" is constitutionally or otherwise required, we conclude that Tate's death sentences are valid even assuming the continued validity of that rule.

8. Because it is clear that at least one valid statutory aggravating circumstance existed in Tate's case, the trial court, acting as the sentencing agent upon Tate's waiver of his right to a jury trial on sentencing, was authorized to exercise its discretion in imposing the two death sentences. Id.

*Sentence Review*

9. Under Georgia statutory law, this Court must review the evidence in every case in which the death penalty has been imposed and address three statutory questions. See OCGA § 17-10-35 (c). Therefore, we summarize the evidence presented in Tate's sentencing trial in more detail below.

The evidence presented in Tate's sentencing trial, including his videotaped interrogation, showed that he and two of his brothers, Dustin Tate and Chad Tate, purchased ammunition, duct tape, and knives at a local sporting goods store and formulated a plan to burglarize the home of Chrissie Williams, to steal drugs and money from her home, and to rape her. When they arrived at the home, Katelyn Williams, Chrissie Williams's three-year-old daughter, answered the door. Dustin Tate shocked Chrissie Williams with a stun gun, believing it would render her unconscious. When his attempt to render her unconscious failed, Dustin Tate forced Chrissie Williams from the room where she had been sleeping and where her infant son was screaming to the room across the hallway. Both Nicholas Tate and Chad Tate assisted Dustin Tate either in taping Chrissie Williams's mouth and eyes with the duct tape or in handcuffing her hands to the headboard and taping her legs to the footboard of the bed. Nicholas Tate threatened to beat Chrissie Williams with his handgun if she did not abandon her attempts at screaming. Nicholas Tate rummaged through the home and through Chrissie Williams's purse looking for drugs and money. Chad Tate and Nicholas Tate undressed Katelyn Williams for their sexual gratification. When Katelyn Williams would not stop screaming, Nicholas Tate directed Chad Tate to silence her. After Chad Tate's attempt to murder her by strangling her failed, Nicholas Tate allowed Chad Tate to take his knife. Chad Tate slit Katelyn Williams's throat several times and then pushed her off of the bed onto the floor, where she eventually bled to death. Dustin Tate left the house out of fear. Nicholas Tate then placed a seat cushion over Chrissie Williams's head as she lay bound to a bed, and he fired one shot through her head, killing her. After killing the two victims in Georgia, the three brothers fled the state, kidnapped a woman and stole her vehicle in Mississippi, and finally surrendered to authorities in Oklahoma.

(a) Viewed in the light most favorable to the verdict, the evidence presented at Tate's sentencing trial was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt the existence of each of the statutory aggravating circumstances found in his case. *Ring v. Arizona*, 536 U. S. 584 (122 SC 2428, 153 LE2d 556) (2002); *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); OCGA § 17-10-35 (c) (2) (mandating a review of the sufficiency of

the evidence supporting statutory aggravating circumstances).

(b) Upon our review of the record, we conclude that the sentences of death in Tate's case were not imposed under the influence of passion, prejudice, or any other arbitrary factor. See OCGA § 17-10-35 (c) (1) (mandating a review by this Court for such impermissible influences in all cases where the death penalty has been imposed).

(c) Considering both the crimes and the defendant, we conclude that the death sentences in Tate's case are not disproportionate punishment within the meaning of Georgia law and are not unconstitutional. See OCGA § 17-10-35 (c) (3); *Gissendaner v. State*, 272 Ga. 704 (19) (a) (532 SE2d 677) (2000) (stating that this Court's statutorily-mandated proportionality review concerns whether a particular death sentence "is excessive per se" or is "substantially out of line" for the type of crime involved and concluding that this Court's proportionality review is not deficient under constitutional standards). The cases appearing in the Appendix support our conclusion in that they show that a significant number of juries have been willing to impose death sentences in cases where a defendant has murdered more than one person and where, as in this case, there was no evidence of arbitrariness or other improper influences.

We note Tate's argument that his death sentences are disproportionate punishment in light of the fact that neither of his co-defendants have received death sentences. See *Gissendaner*, 272 Ga. at 717 (19) (a) (noting that this Court's proportionality review includes an examination of the sentences received by any co-defendants). The evidence in Tate's sentencing trial showed that one co-defendant, Chad Tate, was merely fifteen years old at the time of the murders and, accordingly, that he was ineligible for the death penalty. See *Roper v. Simmons*, 543 U. S. 551 (125 SC 1183, 161 LE2d 1) (2005); *Walker v. State*, 282 Ga. 774 (14) (653 SE2d 439) (2007) (noting in a proportionality review that the co-defendant was ineligible for a death sentence based on his having been adjudicated as being mentally retarded). The evidence in Tate's sentencing trial also showed that the second co-defendant, Dustin Tate, was neither the actual killer nor the primary driving force in the decision to kill the victims. Accordingly, we conclude that Nicholas Tate's death sentences are not excessive per se or substantially out of line, even in light of the fact that Dustin Tate, the only other adult present during the murders, has received a sentence less than death. *Gissendaner*, 272 Ga. at 718 (19) (b) (weighing the relative culpabilities of co-defendants who each could reasonably have been argued to be more culpable than the other and finding no unlawful disproportionality).

*Judgment affirmed. All the Justices concur.*

APPENDIX.

*Stinski v. State*, 286 Ga. 839 (691 SE2d 854) (2010); *O'Kelley v. State*, 284 Ga. 758 (670 SE2d 388) (2008); *Rivera v. State*, 282 Ga. 355 (647 SE2d 70) (2007); *Williams v. State*, 281 Ga. 87 (635 SE2d 146) (2006); *Lewis v. State*, 279 Ga. 756 (620 SE2d 778) (2005); *Riley v. State*, 278 Ga. 677 (604 SE2d 488) (2004); *Franks v. State*, 278 Ga. 246 (599 SE2d 134) (2004); *Sealey v. State*, 277 Ga. 617 (593 SE2d 335) (2004); *Arevalo v. State*, 275 Ga. 392 (567 SE2d 303) (2002); *Raheem v. State*, 275 Ga. 87 (560 SE2d 680) (2002), disapproved on unrelated grounds by *Patel v. State*, 282 Ga. 412, 413 (2), n. 2 (651 SE2d 55) (2007); *Lance v. State*, 275 Ga. 11 (560 SE2d 663) (2002); *Lucas v. State*, 274 Ga. 640 (555 SE2d 440) (2001); *Rhode v. State*, 274 Ga. 377 (552 SE2d 855) (2001); *Colwell v. State*, 273 Ga. 634 (544 SE2d 120) (2001); *Esposito v. State*, 273 Ga. 183 (538 SE2d 55) (2000); *Heidler v. State*, 273 Ga. 54 (537 SE2d 44) (2000); *Morrow v. State*, 272 Ga. 691 (532 SE2d 78) (2000); *Pace v. State*, 271 Ga. 829 (524 SE2d 490) (1999); *Cook v. State*, 270 Ga. 820 (514 SE2d 657) (1999); *DeYoung v. State*, 268 Ga. 780 (493 SE2d 157) (1997); *Raulerson v. State*, 268 Ga. 623 (491 SE2d 791) (1997); *McMichen v. State*, 265 Ga. 598 (458 SE2d 833) (1995); *Ferrell v. State*, 261 Ga. 115 (401 SE2d 741) (1991).

DECIDED JUNE 1, 2010 —
RECONSIDERATION DENIED JUNE 28, 2010.

*Mitchell D. Durham, Benjamin B. Reed*, for appellant.
*Fred A. Lane, Jr., District Attorney, Anthony Volkodav, Jr., Assistant District Attorney, Thurbert E. Baker, Attorney General, Lyndsey J. Hurst, Assistant Attorney General*, for appellee.