S10P1772. LOYD v. THE STATE.

(705 SE2d 616)

HUNSTEIN, Chief Justice.

Roger Lynn Loyd pled guilty in this death penalty case to the malice murder of three-year-old Tevin Hammonds and to related crimes committed against the child. Loyd waived his right to a jury trial as to sentencing for the murder. See *Ring v. Arizona*, 536 U. S. 584 (II) (122 SC 2428, 153 LE2d 556) (2002) (Sixth Amendment requires aggravating circumstances to be found by a jury); see also *Jones v. State*, 279 Ga. 854 (5) (622 SE2d 1) (2005). At the conclusion

of a bench trial on sentencing, the trial court found the existence of multiple statutory aggravating circumstances and sentenced Loyd to death for the murder. See OCGA § 17-10-30 (b). The trial court thereafter denied Loyd's motions to withdraw the guilty pleas and for a new trial.[1] Loyd appeals and, for the reasons set forth below, we affirm Loyd's convictions and sentences.

1. The trial court was authorized to conclude the following based upon the evidence presented at the sentencing trial, including evidence of several statements Loyd made to law enforcement officers that were corroborated by either direct or circumstantial evidence. On December 1, 1998, Loyd was with Faye Hammonds at her apartment; her son, Tevin, who had just recently turned three years old, was also there. At approximately 10:30 p.m., Hammonds went to the adjacent apartment, leaving Tevin alone with Loyd inside the residence for a few minutes. Loyd, who was upset with Hammonds for refusing his sexual advances, told the child that they were going to Loyd's father's house. However, his admitted intention in removing Tevin from his home was "to have sex with him."

While holding Tevin's hand, Loyd led him from the apartment and down a dirt road to an abandoned trailer. Although Tevin initially went with Loyd willingly, he soon began to tell Loyd that he wanted to return home. Nevertheless, Loyd took the child inside the trailer and into a bedroom. After Tevin was made to lie down on the floor and his pants were removed, Loyd fondled Tevin's buttocks and

---

[1] The crimes occurred on December 1, 1998. On February 8, 1999, a Crisp County grand jury indicted Loyd on one count each of malice murder, kidnapping with bodily injury, cruelty to children and enticing a child for indecent purposes, three counts of aggravated sodomy and two counts of reckless conduct. On February 9, 1999, the State filed written notice of its intent to seek the death penalty, which it amended on May 17, 2000. On October 5, 2000, the State agreed to dismiss the two counts of reckless conduct and one count of aggravated sodomy and Loyd pled guilty to the remaining counts in the indictment. At the same plea hearing, Loyd also entered a plea of guilty to a separate indictment charging him with one count of child molestation and two counts of aggravated child molestation of a different victim that occurred in 1993. A bench trial as to sentencing for the murder was held October 17-19, 2000. On October 19, 2000, the trial court imposed a death sentence for the murder. The trial court also imposed a consecutive life sentence for kidnapping with bodily injury, a consecutive ten-year sentence for cruelty to children, a consecutive twenty-year sentence for the first count of aggravated sodomy, a concurrent ten-year sentence for the second count of aggravated sodomy and a consecutive twenty-year sentence for enticing a child for indecent purposes. As to Loyd's guilty pleas to the charges in the second indictment, the trial court imposed a five-year sentence for child molestation, to be served consecutively to the sentences imposed for the crimes against Tevin Hammonds and a twenty-year sentence for each count of aggravated child molestation, to be served concurrently with each other and with the sentence for child molestation. Loyd filed a motion for a new trial November 17, 2000. On January 4, 2001, Loyd made an oral motion to withdraw his guilty pleas, which the trial court denied in an order filed June 29, 2006. The trial court affirmed its denial of Loyd's motion to withdraw his guilty pleas and denied Loyd's motion for a new trial in an order filed April 6, 2010. Loyd filed a notice of appeal April 30, 2010, the appeal was docketed July 16, 2010 for the September 2010 term of this Court and the case was orally argued October 12, 2010.

digitally penetrated Tevin's anus. Then Loyd got on his knees, cutting himself on a piece of broken glass on the carpet. Loyd lowered his pants and, in an attempt to arouse himself, first rubbed his penis against Tevin's buttocks and then between Tevin's legs. Loyd put his own saliva on Tevin as lubrication and attempted to anally penetrate Tevin. He performed oral sex on Tevin and then put his penis in Tevin's mouth, which caused Tevin to gag and vomit on Loyd and on the floor of the trailer. Loyd was unable to achieve an erection. Frustrated, Loyd took out his pocketknife, cut his underwear off himself and used it to wipe the blood off his knee and the vomit off his body. Then Loyd put his clothes back on and instructed Tevin to do the same. Before they left the trailer, Loyd threatened to kill Tevin if he told his mother about the molestation.

Next, Loyd took Tevin down nearby railroad tracks to a dump site, ignoring the child's entreaties to go home. Loyd walked Tevin behind a mound of dirt, where he directed the child to lie down and asked him if he were ready to die. When Tevin said that he did not want to die and began to cry, Loyd told the child, "You're fixing to." Loyd then began strangling the child and, as Tevin struggled and kicked, stabbed Tevin in the left thigh using his pocketknife to stop the kicking. Loyd continued to strangle Tevin for at least five minutes but, when the child took a deep breath after Loyd released his grasp, Loyd resumed strangling him until he was dead. Loyd covered the body with a discarded political campaign sign to conceal it and threw Tevin's shoes, which had been kicked off during the struggle, a few feet to the right of the body before leaving the area. Loyd told police that he intended to return the next night to dispose of Tevin's body in a dumpster because he knew its contents would be picked up and taken to a landfill the following day.

Hammonds testified that she left Tevin alone with Loyd for approximately five minutes before returning to find both of them gone. When she finally located Loyd the next morning, he told her that he had not seen Tevin and offered to help in the search for him. However, Loyd soon told law enforcement officers involved in the search that there was no need to continue, stating "he's dead, I killed him, I made sure of it." In addition to directing police to the location of Tevin's body, Loyd drew diagrams accurately depicting the route that he and Tevin took and the crime scenes at the abandoned trailer and the dump site. An investigation of the trailer revealed underwear in the hallway and blood stains and vomit on the bedroom carpet; the blood on the carpet and on the underwear tested positive for Loyd's blood. Shoe impressions matching Tevin's and Loyd's shoes were found leading to the murder scene; Tevin's shoes were located in the area where Loyd indicated he had tossed them. Loyd told police that he lost three writing pens from his shirt pocket

during the incident; three pens matching Loyd's descriptions were found lying around Tevin's body. Saline swabs of Tevin's penis and scrotum tested positive for amylase, an enzyme present in saliva. The medical examiner testified that the cause of Tevin's death was strangulation and that, while still alive, Tevin suffered a superficial stab wound on his left thigh consistent with a knife wound.

Although Loyd pled guilty to Tevin's murder and related crimes, we nevertheless have reviewed the evidence from his sentencing trial and conclude that it was sufficient to enable any rational trier of fact to find Loyd guilty of those crimes beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U. S. 307 (III) (B) (99 SC 2781, 61 LE2d 560) (1979). See also *Sands v. State*, 262 Ga. 367 (1) (418 SE2d 55) (1992) ("[a]lthough an uncorroborated confession cannot support a conviction under OCGA § 24-3-53, corroboration of a confession in any particular satisfies the requirements of the statute").

2. Loyd voiced his desire to plead guilty on the third day of jury selection in his case while sitting in the courtroom outside his counsel's presence during a late morning break. After Loyd met with the three attorneys who were representing him, his psychiatrist and his mental health counselor, the jury selection process resumed that afternoon. The following morning, however, Loyd again expressed his desire to plead guilty. After defense counsel conferred with the district attorney, Loyd's guilty pleas were entered.

Loyd contends his guilty pleas were not knowingly and voluntarily entered based on his assertions that he was "totally stressed out and ready to get it over with" at the time that he entered his guilty pleas; he was not "thinking straight" as a result of being on medication to control his moods; he was agitated as a result of the "harassing" questions the prospective jurors faced during voir dire; and he was misinformed during the plea colloquy regarding his right to later withdraw his pleas. Accordingly, he claims that the trial court erred by denying his oral motion to withdraw his guilty pleas.

(a) Loyd did not move to withdraw his guilty pleas until the term of court following the term in which he was sentenced. See OCGA § 15-6-3 (13) (B) (establishing the terms of court for Crisp County).

It is well settled that when the term of court has expired in which a defendant was sentenced pursuant to a guilty plea the trial court lacks jurisdiction to allow the withdrawal of the plea. [Cit.] [Loyd]'s only available means to withdraw his guilty plea[s] is through habeas corpus proceedings, [cit.] and the trial court therefore properly denied [Loyd]'s motion.

*Henry v. State*, 269 Ga. 851, 853 (2) (507 SE2d 419) (1998) (affirming the trial court's denial of a defendant's untimely motion to withdraw his guilty plea in a capital murder case).

(b) Moreover, a review of the record shows that, even if Loyd's motion had been timely, allowance of the withdrawal of his guilty pleas would not be required.

> When a defendant enters a plea of guilty, and subsequently challenges the validity of the guilty plea, the State may meet its burden of demonstrating that the plea was intelligently and voluntarily entered by showing on the record of the guilty plea hearing that the defendant was cognizant of all of the rights he was waiving and the possible consequences of his plea, or by use of extrinsic evidence that affirmatively shows that the guilty plea was knowing and voluntary. [Cits.] The trial court is the final arbiter of all factual issues raised by the evidence, [cit.], and after sentence is pronounced a guilty plea may be withdrawn only to correct a manifest injustice. [Cits.]

*Cazanas v. State*, 270 Ga. 130, 131 (508 SE2d 412) (1998).

Here, the transcript of the plea hearing shows that, prior to Loyd's entering his guilty pleas, his counsel stated for the record that Loyd's psychiatrist, who had begun treating Loyd prior to his arrest and had seen Loyd on a number of occasions, met with Loyd on the previous day and found him competent to enter a guilty plea. Trial counsel also stated the following: that he and co-counsel had "in[-]depth conversations" with Loyd regarding the consequences of his entering a guilty plea in this case and his waiving the right to a jury trial as to sentencing; that counsel discussed with Loyd what they perceived as the advantages and disadvantages of the various options that were available to him; and that Loyd wished to plead guilty and to have his sentence for the murder count decided by the trial judge. Defense counsel concluded by stating that Loyd had expressed to him "logical and thought-out reasons" for his decision; Loyd wanted to plead guilty "because he's guilty of the crime[s]"; "every time [Loyd] hear[d] a witness or juror discussing this incident he relive[d] it"; and Loyd wanted "to admit to what he did" and move on to "the issues of what the punishments are." In response to the district attorney's questioning, Loyd stated that he took an antidepressant on a daily basis, that the medication did not interfere with his understanding of the plea hearing and that he was not under the influence of alcohol or any drugs or other substances that would interfere with his ability to understand the proceedings.

Our review of the plea hearing transcript establishes that the

trial court determined a factual basis existed for the pleas, see Uniform Superior Court Rule (USCR) 33.9, and that Loyd understood the nature of the charges to which he was pleading. See USCR 33.8 (A). Additionally, Loyd testified that he was able to read and write, that he was not promised anything by the State in exchange for his pleas and that he understood the maximum sentences for each of the counts to which he was pleading guilty, including the fact that the State would still be seeking the death penalty for murder even though Loyd was pleading guilty.

The plea transcript also affirmatively shows that the district attorney advised Loyd that, by pleading not guilty or remaining silent and not entering a plea, he would obtain a jury trial and that, by entering pleas of guilty, Loyd was waiving the right to a jury trial and the following other rights: the presumption of innocence; the right to the assistance of counsel during trial; the right to require the State to prove his guilt beyond a reasonable doubt; the right against self-incrimination;[2] the right to subpoena witnesses; the right to confront witnesses against him; and the right to testify and to offer other evidence on his own behalf. See USCR 33.8 (B). See also *Boykin v. Alabama*, 395 U. S. 238, 243 (89 SC 1709, 23 LE2d 274) (1969). Loyd stated that no one had threatened or coerced him in any way into entering his guilty pleas; that he wished to have the trial judge make the sentencing decision as to the murder charge; that his three attorneys, his psychiatrist and his mental health counselor had discussed with him the negative consequences of his decision to plead guilty; and that he was entering his pleas freely and voluntarily.

Contrary to Loyd's assertion, the district attorney did not misstate the law when he advised Loyd that a defendant in a case where the State is seeking the death penalty does not have an absolute right to withdraw his guilty plea before judgment is pronounced. See *Browner v. State*, 257 Ga. 321, 321-322 (1) (357 SE2d 559) (1987) (reaffirming that, because there is no plea bargaining involved in death penalty cases and, thus, no purpose in allowing a defendant to withdraw his guilty plea before judgment is pro-

---

[2] At one point during the plea colloquy, Loyd volunteered that he understood that he could not be "compelled to get up on the stand and plead guilty." Loyd was properly advised by both the district attorney and his own counsel, however, that he was not obligated to testify at "any trial." See *Adams v. State*, 285 Ga. 744, 746, n. 3 (683 SE2d 586) (2009) (explaining that terminology other than "the right against self-incrimination" may be employed in advising a defendant, but that he or she must be clearly advised that the right involved is a trial right). Moreover, in addition to the transcript of the plea colloquy, the record contains a plea statement form signed by Loyd, his counsel and the trial judge setting forth the full panoply of the rights of an accused and Loyd's knowing, intelligent and voluntary waiver of those rights, including the right not to incriminate oneself. See *State v. Cooper*, 281 Ga. 63, 65 (2) (636 SE2d 493) (2006) (stating that the decisive question is whether the record as a whole affirmatively shows that the plea was knowing and voluntary).

nounced, the provision in OCGA § 17-7-93 granting that right to defendants does not apply to guilty pleas knowingly and voluntarily entered in death penalty cases). See also *Fair v. State*, 245 Ga. 868, 877-878 (8) (268 SE2d 316) (1980).[3]

Accordingly, we conclude that even if Loyd's motion had been timely filed, the record shows that Loyd voluntarily and intelligently entered his guilty pleas. Thus, Loyd has failed to show that withdrawal of his pleas was necessary to correct a manifest injustice. See USCR 33.12; *State v. Evans*, 265 Ga. 332, 336 (3) (454 SE2d 468) (1995).

3. Loyd contends that the trial court erred by denying his motions for a continuance[4] on the ground that he had insufficient time to prepare for trial. Specifically, Loyd asserts that he lacked sufficient time to investigate adequately the information contained in a psychological report, which was served on him March 22, 2000 after his court-ordered mental evaluation, in order to prepare mitigation evidence for the sentencing trial.

> [M]otions for a continuance predicated on the basis that counsel ha[s] not had sufficient time to prepare for trial address themselves to the sound discretion of the trial court, and the ruling of the trial judge in denying a motion for a continuance will not be interfered with unless the court has abused its discretion in denying the motion.

(Citations omitted.) *Burnett v. State*, 240 Ga. 681, 684 (1) (242 SE2d 79) (1978). See OCGA § 17-8-22.

Here, the record shows that, in response to defense counsel's contention that a significant amount of investigation still remained to be completed in Loyd's case, the trial court authorized additional time and funds to enable defense counsel to obtain the assistance of a third attorney, at least three investigators and a secretary and/or a paralegal devoted to Loyd's case. The trial court also assured Loyd's counsel that it was amenable to recessing trial and even chartering an airplane, if necessary, in order for defense counsel to travel to interview witnesses for trial.

Moreover, after Loyd entered his guilty pleas, defense counsel informed the trial court near the conclusion of the plea hearing that the defense could be ready for the sentencing trial in "a matter of a

---

[3] Nothing in *Henry v. State*, supra, 269 Ga. at 853 (2), in which we disposed of a motion to withdraw a guilty plea in a death penalty case on the alternative basis that the motion was procedurally untimely, conflicts with our holdings in *Browner* and *Fair*, supra, that a defendant does not have the right in a case in which the State seeks the death penalty to withdraw a guilty plea voluntarily and knowingly entered.

[4] The motions were filed August 14, 2000, August 25, 2000 and September 28, 2000.

few weeks." The trial court stated in response that it would reconvene for a sentencing trial "at a time that's convenient for both sides" and it left the determination of a date for the sentencing trial to the district attorney and defense counsel. The sentencing trial began two weeks after Loyd entered his guilty pleas, at which time Loyd neither renewed his motion for a continuance nor announced that he was not prepared to proceed.

At the bench trial, Loyd called as witnesses three mental health professionals, all of whom were familiar with his mental health history.[5] Through their testimony, the trial court heard that Loyd had a long-standing history of severe mental illness beginning with his hospitalization at the age of nine years; that he had been diagnosed with bipolar disorder, borderline personality disorder, antisocial personality disorder, pedophilia and polysubstance abuse and dependence; that he had also more recently been diagnosed with frontal lobe personality disorder and organic personality disorder as the result of a closed head injury that he suffered in a truck and train collision in 1992; that multiple times he had been incarcerated, hospitalized for suicide attempts and treated in the outpatient program of a behavioral health facility; and that he was "seriously and chronically mentally ill." Loyd has not identified any additional witnesses or evidence in mitigation that he might have presented had he been granted a continuance. Assuming, without deciding, that Loyd did not waive his right to appeal the trial court's denial of his motions for a continuance by his active participation in selecting the date for the sentencing trial and his failure to renew those motions, Loyd has shown no harm resulting from the trial court's denial of his motions for a continuance. This enumeration is without merit. See *Harrison v. State*, 251 Ga. 837, 838 (1) (310 SE2d 506) (1984).

4. Loyd challenges the sufficiency of the evidence to support the three statutory aggravating circumstances found by the trial court.

(a) The trial court found beyond a reasonable doubt that Tevin's murder was committed while Loyd was engaged in the commission of another capital felony, to wit: kidnapping with bodily injury. See OCGA § 17-10-30 (b) (2). The offense of "kidnapping with bodily injury is a capital felony that may be considered by the jury as a § b (2) statutory aggravating circumstance supporting a death sentence for the offense of murder. [Cit.]" *Tharpe v. State*, 262 Ga. 110, 115

---

[5] Our review of the trial transcript shows that Loyd was apparently prepared to present additional witnesses. However, when the State stipulated to the admission of several documents that were created by mental health professionals at the time they treated Loyd during his several hospitalizations for mental illness, the defense released those mental health professionals from their subpoenas and did not call them to testify.

(22) (b) (416 SE2d 78) (1992).

Loyd pled guilty to the offense of kidnapping with bodily injury and the evidence presented at the sentencing trial as summarized in Division 1 correlated with the definition of kidnapping. See OCGA § 16-5-40 (a) (a person commits the offense of kidnapping when he abducts another without lawful authority and holds that person against his or her will). "The abduction required by the kidnapping statute need not be accomplished by force — inducement, persuasion or fraud is sufficient to prove abduction." (Footnote omitted.) *Pickett v. State*, 271 Ga. App. 250, 252 (1) (609 SE2d 181) (2005) (finding a defendant's actions in fraudulently inducing a child to get into the defendant's truck and go with him constituted an abduction within the meaning of the kidnapping statute). The stab wound to Tevin's thigh and his strangulation constitute bodily injuries sufficient to complete this statutory aggravating circumstance. See *Waters v. State*, 248 Ga. 355, 368 (11) (283 SE2d 238) (1981) (holding that the fatal injury to a murder victim may be considered as satisfying the bodily injury component of the capital felony of kidnapping with bodily injury). Accordingly, we find that the evidence was sufficient to support the trial court's finding of the existence of a statutory aggravating circumstance based on kidnapping with bodily injury beyond a reasonable doubt. See OCGA § 17-10-30 (b) (2).

(b) The trial court also found beyond a reasonable doubt that Tevin's murder was outrageously or wantonly vile, horrible or inhuman in that it involved torture to the victim and depravity of mind of the defendant. See OCGA § 17-10-30 (b) (7). Loyd pled guilty to the offenses of cruelty to children, aggravated sodomy and enticing a child for indecent purposes with Tevin as the victim as charged in the indictment. At the sentencing trial, the State presented evidence that Loyd took three-year-old Tevin from his home to an abandoned trailer late at night for the purpose of having sex with him and that, upon their arrival, Loyd molested Tevin, including attempting to anally rape him, orally sodomizing him and putting his penis in Tevin's mouth, which caused Tevin to gag and vomit. The State also presented evidence that Loyd threatened to kill Tevin if he told about the molestation and that, despite Tevin's repeated requests to go home, Loyd took Tevin to a dump site, made him lie down on the ground and announced to him that he was about to die before repeatedly strangling the child, who struggled so fiercely that he kicked off his own shoes. The State's expert testified that even a small child's natural reaction to strangulation would be to struggle and that death by strangulation can take as long as ten minutes to occur. The evidence supports the trial court's finding beyond a reasonable doubt that the murder was outrageously or

wantonly vile, horrible or inhuman in that it involved torture to the victim and the depravity of mind of the defendant. See *Hance v. State*, 245 Ga. 856, 861-862 (3) (268 SE2d 339) (1980) (holding that torture occurs when the victim is subjected to serious physical abuse before death, that serious sexual abuse may constitute serious physical abuse, that facts supporting a finding of torture will also support a finding of depravity of mind and that the age of the victim may be considered in determining whether the evidence shows depravity of mind). Accord *Presnell v. State*, 274 Ga. 246, 248 (1) (551 SE2d 723) (2001) (finding evidence sufficient to authorize a finding of the two subparts of the § (b) (7) aggravating circumstance, torture and depravity of mind, where the defendant planned his crimes, abducted his eight-year-old victim, threatened to kill her, took her to a remote area, made her strip naked, forced her to watch as he raped her friend, chased her when she tried to escape and held her head underwater where she struggled for several minutes before dying).

(c) The trial court also found beyond a reasonable doubt that the offense of murder was committed by a person with a prior record of conviction for a capital felony based upon evidence presented by the State regarding Loyd's prior out-of-state conviction. See OCGA § 17-10-30 (b) (1). "The § (b) (1) statutory aggravating circumstance may be established by proof of out-of-state convictions that ... clearly are comparable to Georgia capital felony offenses. [Cit.]" *Moon v. State*, 258 Ga. 748, 752 (3) (375 SE2d 442) (1988). A defendant's previous rape conviction may be considered by the trier of fact to establish the § (b) (1) aggravating circumstance "since, in this context, rape is a capital felony. [Cits.]" *Hicks v. State*, 256 Ga. 715, 727 (19) (b) (352 SE2d 762) (1987). See *Crawford v. State*, 254 Ga. 435, 441 (5) (330 SE2d 567) (1985) ("[t]his court has construed the term 'capital felony' as used in OCGA § 17-10-30 'in a generic sense to include those felonies which were capital crimes in Georgia at the time this section of our death penalty statute was enacted.' [Cit.]").

A State's witness testified that she was raped by Loyd as a 13-year-old in Illinois. The State entered authenticated copies of the Illinois charging document that charged Loyd with the 1987 criminal sexual assault of "Jane Doe," Loyd's signed guilty plea to the charge and the resulting judgment. The State established through the testimony of the investigating officer in the case that the witness who testified that Loyd raped her was "Jane Doe."

The State also introduced into evidence a certified copy of the Illinois criminal sexual assault statute to which Loyd pled guilty as having violated in 1987. That criminal sexual assault statute was enacted by the Illinois General Assembly in 1984 as part of the Criminal Sexual Assault Act, which repealed eight statutes in that

state's criminal code that had defined sex offenses, including the offense of rape, and replaced them with newly-created offenses. See *Illinois v. Lieberman*, 776 NE2d 218, 226 (Ill. 2002). "Section 12-13 (a) (1) [defining criminal sexual assault] is . . . the intended sex offense replacement for [Illinois's] repealed statute[ ] of rape . . . ." *Illinois v. Haywood*, 515 NE2d 45, 49 (Ill. 1987) (discussing the legislative history of Illinois's Criminal Sexual Assault Act). The Illinois statute provides that a person commits criminal sexual assault "if he or she: (1) commits an act of sexual penetration by the use of force or threat of force." 720 ILCS 5/12-13 (a) (1), previously cited as Ill. Rev. Stat., Ch. 38, par. 12-13 (a) (1). In Georgia, a person commits the offense of rape when he has carnal knowledge of a female forcibly and against her will. OCGA § 16-6-1 (a). "Carnal knowledge in rape occurs when there is any penetration of the female sex organ by the male sex organ." Id.

Although the Illinois criminal sexual assault statute is apparently broader than Georgia's rape statute,[6] the Illinois charging document introduced by the State specifically charged Loyd with violating the Illinois statute by "knowingly committ[ing] an act of sexual penetration with Jane Doe, in that by the threat of force, said defendant placed his penis in contact with the vagina of Jane Doe." By pleading guilty, Loyd admitted the facts set forth in the charging document. See *Wilson v. Reed*, 246 Ga. 743 (1) (272 SE2d 699) (1980). In Georgia, " 'the penetration of the female sexual organ by the sexual organ of the male, which is necessary to constitute rape, need be only slight; it is not necessary that the vagina shall be entered . . . , but an entering of the anterior of the organ, known as the vulva or labia, is sufficient.' [Cits.]" *Payne v. State*, 231 Ga. 755 (1) (204 SE2d 128) (1974).

While the definition of criminal sexual assault under 720 ILCS 5/12-13 (a) (1), previously cited as Ill. Rev. Stat., Ch. 38, par. 12-13 (a) (1), does not contain the element of non-consent,[7] the "against her will" element of Georgia's rape statute was supplied here by evidence that the victim was under 14 years old, which was the legal age

---

[6] See *Illinois v. Lieberman*, supra, 776 NE2d at 227 (noting several distinctions between the former offense of rape and the new offense of criminal sexual assault, including the fact that the offense of rape "could be charged only where the offender was male and the victim was female," whereas the new offense of criminal sexual assault employed gender neutral language, "thereby widening the range" of the offense).

[7] We note, however, that the Illinois statute provides that consent is a defense to the charge of criminal sexual assault. See 720 ILCS 5/12-17 (a), formerly known as Ill. Rev. Stat., Ch. 38, par. 12-17 (a). "[I]f the accused raises a question of the consent, the State has a burden of proof beyond reasonable doubt on the issue of consent as well as on the issue of force. [Cit.]" *Illinois v. Haywood*, supra, 515 NE2d at 50. Loyd waived this defense by entering a plea of guilty to the charge of criminal sexual assault. See, e.g., *Carroll v. Holt*, 251 Ga. 144 (304 SE2d 60) (1983).

of consent in this State at the time the assault occurred. See *Drake v. State*, 239 Ga. 232, 233 (236 SE2d 748) (1977), superseded by statute on other grounds (holding that "against her will" in the rape statute means "without her consent" and that the fact that the victim was under the age of consent was sufficient to establish that element). Accord *Owens v. State*, 178 Ga. App. 750 (3) (344 SE2d 722) (1986).[8] Therefore, we conclude that the evidence was sufficient for a reasonable trier of fact to find beyond a reasonable doubt that Loyd's prior out-of-state conviction for criminal sexual assault was comparable to a Georgia rape conviction and, thus, we find that the § (b) (1) aggravating circumstance was adequately supported by the evidence.

5. This Court is required by OCGA § 17-10-35 (c) (1)-(3) to determine whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor, whether the evidence supports the finding of a statutory aggravating circumstance and whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

(a) Upon a review of the trial transcript and the record, we conclude that the sentence of death in Loyd's case was not imposed under the influence of passion, prejudice or any other arbitrary factor. See OCGA § 17-10-35 (c) (1).

(b) As summarized in Division 1 and as discussed in Division 4, the evidence presented at Loyd's sentencing trial was clearly sufficient to authorize a rational trier of fact to find beyond a reasonable doubt the existence of each of the statutory aggravating circumstances found in his case. See OCGA § 17-10-35 (c) (2). See also *Ring v. Arizona*, supra, 536 U. S. at 584; *Jackson v. Virginia*, supra, 443 U. S. at 319 (III) (B).

(c) In reviewing the death sentence in Loyd's case to determine whether it is disproportionate to the penalty imposed in similar cases considering both the crime and the defendant as required by OCGA § 17-10-35 (c) (3), we are concerned with whether his sentence is excessive per se or substantially out of line for the type of crime involved and not with whether there *ever* have been sentences less than death imposed for similar crimes. *Gissendaner v. State*, 272 Ga. 704 (19) (a) (532 SE2d 677) (2000). In addition to considering the evidence discussed in Division 1 regarding the circumstances of the

---

[8] The laws of this State were subsequently amended to change to 16 years the age at which a child can legally consent to certain sexual acts. See Ga. L. 1995, pp. 957-959, §§ 3-5. See OCGA § 16-6-3 (defining statutory rape), OCGA § 16-6-4 (defining child molestation and aggravated child molestation) and OCGA § 16-6-5 (defining the offense of enticing a child for indecent purposes).

crime in this case, we have also considered in our proportionality review the evidence regarding the defendant that was presented at the sentencing trial. That evidence, taken from Loyd's own statements to police officers, showed that his crimes could be called "premeditated" because he "already knew what [he] was going to do when [he] took [Tevin] away from home"; that he sexually molested his three-year-old victim "out of vengeance" for the refusal of the child's mother to have sexual relations with him and then strangled the child to death because he was a "little tattletale"; and that, immediately after he molested and murdered Tevin, he went to a female acquaintance's home with the intention of raping and murdering her but refrained from doing so when he learned that other people were expected to arrive there shortly.

"Our consideration of 'the defendant' also requires a review of [any other] aggravating factors presented at trial, including both past conduct and conduct after the crime." *Gissendaner v. State*, supra, 272 Ga. at 717 (19) (a). Here, the evidence showed that, for more than a year, Loyd daily molested a preschool-aged child while he lived with her and her mother by anally raping the child, sodomizing her and forcing her to sodomize him. In addition, Loyd admitted that he had in the past sexually molested approximately 15 children after befriending their parents in order to be permitted to babysit them and that he had threatened his young victims that he would kill their parents if they ever told about the molestation. The State also presented testimony and evidence showing that, during random searches of Loyd's jail cell while he was incarcerated awaiting trial, officials discovered a "homemade type weapon" and photographs of partially-clad young children that had "scribblings" of breasts and genitalia on them; Loyd told the Crisp County sheriff that if the State did not "fry" him and, instead, he were released from incarceration, "he was going to do it again."

Although Loyd's mental health experts testified that Loyd was "majorly mentally ill" and, as a result, had difficulty controlling his actions, they also opined that he knew right from wrong and that he was able to and would have refrained from committing the criminal acts that he committed in this case had he been convinced that he would be detected, thereby indicating their opinion that Loyd had significant control over his actions. Given the merciless and calculated nature of this murder, the sentencer's reaction was not excessive. See *Colwell v. State*, 273 Ga. 634 (13) (544 SE2d 120) (2001) (finding a defendant's two death sentences were not disproportionate punishment where the defendant suffered from mental illness but where nothing in the record suggested that he was incapable of perceiving right and wrong or of understanding the consequences of his actions).

After considering both the crime and the defendant and after comparing the evidence and sentence in this case with those of previous murder cases reviewed, we conclude that the death sentence in Loyd's case is not excessive or disproportionate punishment within the meaning of Georgia law and is not unconstitutional. See OCGA § 17-10-35 (c) (3). The cases in the appendix support the imposition of the death penalty in this case in that all involved a kidnapping with bodily injury or the § (b) (7) aggravating circumstance or a murder committed by someone with a previous conviction for a capital felony. Several of the cases involved the murder of a child in addition to involving one or more of the above statutory aggravating circumstances. Accordingly, the cases in the appendix show the willingness of juries in Georgia to impose the death penalty under circumstances similar to those in this case.

*Judgment affirmed. All the Justices concur.*

APPENDIX.

*Tate v. State*, 287 Ga. 364 (695 SE2d 591) (2010); *Stinski v. State*, 286 Ga. 839 (691 SE2d 854) (2010); *O'Kelley v. State*, 284 Ga. 758 (670 SE2d 388) (2008); *Walker v. State*, 281 Ga. 157 (635 SE2d 740) (2006); *Williams v. State*, 281 Ga. 87 (635 SE2d 146) (2006); *Nance v. State*, 280 Ga. 125 (623 SE2d 470) (2005); *Lewis v. State*, 279 Ga. 756 (620 SE2d 778) (2005); *Perkinson v. State*, 279 Ga. 232 (610 SE2d 533) (2005); *Riley v. State*, 278 Ga. 677 (604 SE2d 488) (2004); *Sealey v. State*, 277 Ga. 617 (593 SE2d 335) (2004); *Braley v. State*, 276 Ga. 47 (572 SE2d 583) (2002); *Lucas v. State*, 274 Ga. 640 (555 SE2d 440) (2001); *Rhode v. State*, 274 Ga. 377 (552 SE2d 855) (2001); *Presnell v. State*, 274 Ga. 246 (551 SE2d 723) (2001); *Fults v. State*, 274 Ga. 82 (548 SE2d 315) (2001); *Esposito v. State*, 273 Ga. 183 (538 SE2d 55) (2000); *Lee v. State*, 270 Ga. 798 (514 SE2d 1) (1999); *Pruitt v. State*, 270 Ga. 745 (514 SE2d 639) (1999).

DECIDED JANUARY 10, 2011 —
RECONSIDERATION DENIED FEBRUARY 7, 2011.

*Jeffrey L. Grube, David E. Morgan III*, for appellant.

*Denise D. Fachini*, District Attorney, *Cheri L. Nichols*, Assistant District Attorney, *Thurbert E. Baker*, Attorney General, *Mary Beth Westmoreland*, Deputy Attorney General, *Patricia Attaway Burton*, Senior Assistant Attorney General, *Richard Tangum*, Assistant Attorney General, for appellee.

*Brian Kammer, Richard A. Malone, Gerald P. Word*, amici curiae.