**FIFTH DIVISION**
**RICKMAN, C. J.,**
**MCFADDEN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 14, 2021**

# In the Court of Appeals of Georgia

A21A0879. SMITH v. THE STATE.

McFADDEN, Presiding Judge.

After a jury trial, Deanta Marcell Smith was convicted of numerous sexual offenses against 15-year-old C. M. : rape, aggravated sexual battery, and several counts of child molestation and sexual battery. On appeal, he challenges the sufficiency of the evidence as to some of those counts, but the evidence authorized his convictions. He also argues that the trial court erroneously instructed the jury on the crime of aggravated sexual battery, but he did not object to the jury charge on that ground and has not shown plain error. Finally, he argues that his trial counsel was ineffective, but he has not shown both deficient performance and prejudice. So we affirm.

1. *Sufficiency of the evidence.*

Smith challenges the sufficiency of the evidence on six of the eleven counts on which he was convicted: Count 1 (rape); Count 2 (child molestation); Count 3 (child molestation); Count 7 (aggravated sexual battery); Count 8 (child molestatation); and Count 11 (sexual battery). When evaluating the sufficiency of the evidence to support a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) (emphasis omitted). "On appeal, this [c]ourt does not reweigh the evidence or resolve conflicting testimony." *Gobert v. State*, 311 Ga. 305, 308 (1) (857 SE2d 647) (2021) (citation and punctuation omitted). "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the [s]tate's case, the jury's verdict will be upheld." *Atkins v. State*, 342 Ga. App. 849, 851 (1) (805 SE2d 612) (2017) (citation and punctuation omitted).

The trial evidence, viewed in the light most favorably to the jury's verdict, showed that in August 2016, Smith was the boyfriend of C. M.'s mother and he lived near them and sometimes spent the night at their house. On August 3, 2016, 15-year-old C. M. was babysitting some younger family members at the house when Smith

2

arrived. No other adults were in the house at the time and C. M. was alone in one of the bedrooms. Smith entered that room and asked C. M. if she would "jack him off," which she understood to mean putting her hand on his penis. C. M. felt the question was inappropriate and she left the room without replying, locked herself in the bathroom, and took a shower. When she emerged from the shower she thought Smith was asleep.

Later that evening, Smith entered a bedroom where C. M. was sleeping. He began touching C. M.'s "private area" beneath her clothing and sucking on her breasts. Smith then picked up C. M. and took her to another bedroom, where he pulled down both his and her pants. In a forensic interview, C. M. stated that Smith "was sticking his private part in [her] private area." At trial, she testified that, as she lay on her back, Smith rubbed his penis "on" and around her vagina. Smith's actions hurt C. M. and made her feel "nasty" and "dirty." Smith then got up, thanked C. M., and pulled up his pants. C. M. fled the bedroom and went into the bathroom, crying. At that time she was too scared to tell anyone what had happened.

On a subsequent evening, C. M. was asleep on a couch in the living room of the house and all of the other people in the house were also asleep when Smith entered the room and laid behind C. M. on the couch. Smith touched C. M.'s "butt"

3

and put his finger in her vagina, hurting her. He also sucked her breasts again. He then gave C. M. five dollars and left. C. M. did not like what had happened, but at the time she did not tell anyone about it.

In late September 2016, C. M. made an outcry about these events to two of her cousins, and one of them immediately reported the conversation to C. M.'s aunts. This led to a conversation between C. M., her aunts, and her mother about what had happened. Afterward, C. M. spoke with the police, gave a forensic interview, and had a medical examination. Due to the passage of time, the medical examination resulted in no physical evidence.

(a) *Rape (Count 1)*.

Smith challenges the sufficiency of the evidence authorizing his conviction for rape, arguing that there was no evidence of penetration. "[P]enetration of the female sex organ by the male sex organ" is a required element of the offense of rape. OCGA § 16-6-1 (a). But the necessary penetration "need be only slight; it is not necessary that the vagina shall be entered, but an entering of the anterior of the organ, known as the vulva or labia, is sufficient." *Loyd v. State*, 288 Ga. 481, 491 (4) (c) (705 SE2d 616) (2011) (citations and punctuation omitted).

At trial, C. M. testified that Smith did not put his penis inside her vagina. But she testified that he "rubb[ed] his penis around [her] vagina," and she answered affirmatively when the prosecutor asked her if Smith put his penis "on [her] vagina." C. M. also stated in her forensic interview (which was played for the jury at trial ) that Smith "laid [her] on the bed" and "was sticking his private part *in* [her] private area," hurting her. (Emphasis supplied.)

From this evidence, the jury could infer that Smith's penis had entered the anterior of C. M.'s sex organ, which was sufficient to authorize a finding of the penetration necessary for Smith to be convicted of rape. See *Martin v. State*, 298 Ga. 259, 265 (1) (b) (779 SE2d 342) (2015) (victim's testimony that defendant had "started to have sex" with her but was unable to "keep an erection" was sufficient to show penetration), disapproved in part on other grounds by *Willis v. State*, 304 Ga. 686, 706 (11) (a) n. 3 (820 SE2d 640) (2018); *Skillern v. State*, 240 Ga. App. 34, 35 (1) (521 SE2d 844) (1999) ("[t]he victim's testimony that defendant tried to force himself into her and that this hurt her private authorizes the rational inference that defendant penetrated the victim's vulva or labia with his sex organ, hurting the sensitive hymenal ring, without entering the vagina[,]" which was sufficient to authorize the jury to find the defendant guilty of rape).

5

(b) *Aggravated sexual battery (Count 7).*

Smith challenges the sufficiency of the evidence authorizing his conviction for aggravated sexual battery. A person commits that offense by "intentionally penetrat[ing] with a foreign object the sexual organ or anus of another person without the consent of that person." OCGA § 16-6-22.2 (b).

The state accused Smith of committing aggravated sexual battery by intentionally penetrating C. M.'s sexual organ with his finger. Smith argues on appeal that the evidence did not support a finding that he used his finger to penetrate her. He points to C. M.'s trial testimony that Smith inserted "something" in her vagina but that she did not know what that object was. In her forensic interview, however, C. M. stated that the object was Smith's finger and the jury was permitted to credit C. M.'s statement in the forensic interview over her trial testimony. See *Atkins*, 342 Ga. App. at 851 (1).

Smith also argues that it was not clear from the evidence whether he inserted the object into C. M.'s vagina or into her anus. But "[i]t is not for us to determine or question how the jury resolved any apparent conflicts or uncertainties in the evidence. Rather, on appeal, we indulge every contingency in favor of the verdict." *Baker v. State*, 273 Ga. App. 297, 299 (1) (614 SE2d 904) (2005) (citation omitted). The

evidence authorized the jury to find that Smith inserted his finger in C. M.'s vagina, as alleged in the indictment.

Smith also argues, summarily, that there was no evidence that C. M. did not consent to Smith's act. "[T]he [s]tate is not exempt from proving lack of consent at trial merely because the victim is under the age of sixteen when establishing a violation of the aggravated sexual battery statute." *State v. Williams*, 308 Ga. 228, 232 (2) (838 SE2d 764) (2020). But this does not mean that C. M. was required to testify that she did not consent. Rather, the jury could infer that fact from other evidence. See *Nembhard v. State*, __ Ga. App. __, __ (1) (859 SE2d 118) (2021) (where a rational juror could find from the evidence that the victim did not consent, the evidence was sufficient to show the lack of consent required for sexual battery even though the victim did not testify that she was scared or told the defendant to stop). C. M.'s depiction of the event in this case — Smith approaching her as she was asleep on the couch, removing the covers from her, and inserting his finger in her vagina, hurting her — was sufficient to show the necessary lack of consent.

(c) *Child molestation (Counts 2, 3, and 8).*

Smith challenges the sufficiency of the evidence authorizing three of his convictions for child molestation. A person commits that offense, among other ways,

7

when he or she "[d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person[.]" OCGA § 16-6-4 (a) (1). In Count 2, the state charged Smith with committing child molestation "by touching [C. M.'s] vagina [on August 3, 2016], with the intent to arouse and satisfy [his] sexual desires[.]" In Count 3, the state charged him with committing that offense "by asking [C. M. on August 3, 2016] to place her hands on his penis, with the intent to arouse and satisfy his sexual desires[.]" And in Count 8, the state charged him with committing that offense "by touching [C. M.'s] vagina [on a later date], with the intent to arouse and satisfy [his] sexual desires[.]"

As to Counts 2 and 8, Smith argues that the evidence was insufficient because it showed only that he touched C. M.'s vulva, not her vagina. But C. M. testified that Smith touched her "private area" on August 3. When asked if by "private area" she meant her vagina, C. M. replied, "Uh-huh." And in her forensic interview she stated that, on the second occasion, Smith "touched [her] private area again." The jury could reasonably infer from this testimony that Smith committed the offense of child molestation in the manner set forth in the indictment. See *Hernandez v. State*, 319 Ga. App. 876, 877-878 (1) (738 SE2d 701) (2013) ("Although the victim did not use the

8

specific term 'vagina' during her testimony, the jury could reasonably infer that she was referring to her vagina when she stated that the contact was with her 'lower private area.'"). Moreover, Smith's sufficiency challenge as to Count 8 is moot because that conviction was merged for sentencing purposes into his conviction for aggravated sexual battery. See *Lupoe v. State*, 284 Ga. 576, 577 (1) n. 2 (669 SE2d 133) (2008).

As to Count 3, Smith argues that the evidence was insufficient because C. M. testified that she did not touch Smith's penis when he asked her to do so and, therefore, no "immoral or indecent act" occurred. But the state was not required to prove that C. M. actually touched Smith's penis. The indictment alleged only that Smith *asked* C. M. to touch his penis. The "act" required for child molestation under OCGA § 16-6-4 (a) "may be merely verbal." *Hicks v. State*, 254 Ga. App. 814, 816 (2) (563 SE2d 897) (2002). See also *Craft v. State*, 324 Ga. App. 7, 8 (a) (749 SE2d 16) (2013) (evidence was sufficient to authorize child molestation conviction where the defendant exposed his penis to the minor victim and asked her to touch it, asked the victim if she had pubic hair, and tried to touch her vaginal area and kiss her). The evidence here that Smith asked C. M. to "jack him off," which she understood to

9

mean to touch his penis, authorized a finding that Smith had engaged in an immoral and indecent act with C. M. with the intent to arouse and satisfy his sexual desires.

(d) *Sexual battery (Count 11).*

Smith challenges the sufficiency of the evidence authorizing one of his convictions for sexual battery, but the trial court merged that conviction into his conviction for aggravated sexual battery for sentencing purposes. So this challenge is moot. See *Lupoe*, 284 Ga. at 577 (1) n. 2.

2. *Jury charge.*

Smith argues that the trial court plainly erred in charging the jury because the charge "implied the [s]tate did not have to prove lack of consent for aggravated sexual battery." See generally *Williams*, 308 Ga. at 232 (2) (holding that state is required to prove lack of consent to show aggravated sexual battery, regardless of the victim's age). While charging on the offense of rape, the trial court instructed the jury that "a person under the age of 16 is legally incapable of giving consent to sexual intercourse." Later, the trial court instructed the jury on the elements of the offense of sexual battery and stated that "lack of actual consent, not lack of consent implied by age, is a specific element of the crime." Immediately thereafter, the trial court instructed the jury on the elements of aggravated sexual battery, which included

10

informing the jury that the state must prove a lack of consent. But the trial court did not repeat the instruction that this element requires lack of actual consent, not lack of consent implied by age.

Smith argues that this omission rendered the charge on aggravated sexual battery erroneous. Because he did not object to the charge at trial, we review this claim only for plain error. See *White v. State*, 291 Ga. 7, 8 (2) (727 SE2d 109) (2012) ("[T]he failure to object to the charge as given precludes appellate review 'unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties.'") (quoting OCGA § 17-8-58 (b)). Under plain error review,

> [r]eversal is authorized if all four prongs of the standard adopted in [*State v.*] *Kelly*[, 290 Ga. 29 (1) (718 SE2d 232) (2011),] are met: the instruction was erroneous, the error was obvious, the instruction likely affected the outcome of the proceedings, and the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*White*, supra at 8 (2).

Smith has not shown that the trial court's failure to specifically instruct on actual consent in relation to aggravated sexual battery was an obvious error beyond reasonable dispute. The charge given by the trial court was correct as a whole; the trial court gave the jury the correct statutory definition for the offense, which included

11

the requirement that the act must occur "without the consent of th[e other] person." OCGA § 16-6-22.2 (b). And at the time of trial in late 2018, the suggested pattern jury instructions did not yet propose that a charge on lack of actual consent be given in connection with aggravated sexual battery. Compare Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 2.38.70 (January 2019 update) (containing instruction on lack of actual consent only in connection with sexual battery) with Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 2.38.70 (August 2019 update) containing instruction on lack of actual consent in connection with both sexual battery and aggravated sexual battery).

Where a charge as a whole is correct, a trial court is not required to give an additional, clarifying charge. See *Williams v. State*, 298 Ga. 208, 218 (7) (779 SE2d 304) (2015). Whether or not to do so is a matter within the trial court's discretion. See *Bennett v. State*, 262 Ga. 149, 153 (10) (a) (414 SE2d 218) (1992). Because in this case the charge on aggravated sexual battery was correct and the trial court was not compelled to give an additional charge clarifying the lack of consent element, there was "no error in the trial court's charge . . ., plain or otherwise." *Williams*, 298 Ga. at 218 (7). See also *Leeks v. State*, 296 Ga. 515, 520-521 (4) (769 SE2d 296) (2015) (where the trial court gave the jury the correct statutory definitions for the offenses

12

at issue and the instruction as a whole did not prevent the jury from considering a lesser included offense, the trial court did not abuse its discretion by failing to give a jury charge on the lesser included offense and the appellant did not show that such failure was plain error).

Smith also has not shown that the trial court's failure to instruct on lack of actual consent in relation to aggravated sexual battery likely affected the outcome of the proceedings. Smith speculates that the jury might have improperly believed that the instruction that "a person under the age of 16 is legally incapable of giving consent to sexual intercourse," which the trial court gave earlier in connection with rape, also applied to aggravated sexual battery. But Smith has "provided no evidence that the jury was either misled or confused [on this point]." *Martin v. State*, 310 Ga. 658, 664 (3) (852 SE2d 834) (2020) (rejecting the defendant's speculative argument that the jury was misled by the charge, and so finding that the defendant had not demonstrated plain error). Moreover, the state did not argue to the jury that C. M.'s age alone could supply the lack-of-consent element for aggravated sexual battery. To the contrary, in closing argument the state asserted that, as to aggravated sexual battery, "we do actually have to prove that it was without her consent." In closing argument the state also equated the lack of consent needed for aggravated sexual

battery with that needed for sexual battery. Under these circumstances, we are not persuaded that the outcome of the trial likely was affected by the trial court's failure to repeat the lack-of-actual-consent instruction specifically in connection with aggravated sexual battery.

For these reasons, Smith has not shown the plain error needed to reverse on this ground.

3. *Ineffective assistance of trial counsel.*

Smith argues that his trial counsel rendered ineffective assistance in several respects. To prevail on this claim, Smith

> must show both that his trial counsel's performance was deficient and that he suffered prejudice as a result. An appellant must satisfy both prongs of [this] test, and if he fails as to one prong, it is not incumbent upon this [c]ourt to examine the other prong. To establish deficient performance, an appellant must overcome the strong presumption that his counsel's conduct falls within the broad range of reasonable professional conduct and show that his counsel performed in an objectively unreasonable way in light of all the circumstances and prevailing norms. To establish prejudice, an appellant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. In reviewing either component of this inquiry, all factual findings by the trial court will be affirmed unless clearly erroneous.

14

*Hughes v. State*, __ Ga. __, __ (2) (__ SE2d __) (Case No. S21A0730, decided July 7, 2021) (citations and punctuation omitted).

(a) *Failure to object to jury instruction on aggravated sexual battery.*

Smith argues that his trial counsel was deficient for failing to object to the failure of the trial court's charge to the jury to include an instruction on actual lack of consent in connection with aggravated sexual battery. But for the same reasons discussed above in Division 2, we find no reasonable probability that the result of the proceeding would have been different but for this omission in the jury charge. So even if we assume without deciding that trial counsel was deficient in failing to object to the charge, Smith has not shown he was prejudiced.

(b) *Failure to object to questions posed by the prosecutor during C. M.'s direct examination.*

Smith argues that his trial counsel was deficient in failing to object during C. M.'s direct examination, when the following exchanges occurred:

A. He was touching me by my private area.

Q. Your private area? And, [C. M.], when you say your private area, do you mean your vagina?

A. Uh-huh.

15

. . .

A. . . . I was laying on my back. He started rubbing his private area around my — my private area.

Q. Okay. And, [C. M.], when you say his private area, are you talking about his penis?

A. Uh-huh.

. . .

Q. Okay. And when he was rubbing his penis on your vagina, did he put his penis inside your vagina? You're going to have to say it out loud.

A. No.

Q. Okay. Now, did he put your – his penis on your vagina?

A. Uh-huh.

In his appellate brief, Smith contends that this series of questions was objectionable because it was "leading, assumed facts not in evidence, and was illogical and nonsensical in its use of [the word] 'vagina.'" The questions, however, were not leading, because they were not "framed as to suggest to the witness the

16

answer which is desired. . . . Rather, the state propounded . . . yes-or-no question[s] regarding [Smith's acts]." *Milner v. State*, 258 Ga. App. 425, 429 (1) (574 SE2d 457) (2002) (citations and punctuation omitted). See *Wiggins v. State*, 338 Ga. App. 273, 276 (2) (787 SE2d 357) (2016) (holding that the question "did he ever get his private part inside of your vagina" was not leading). The questions also do not assume facts not in evidence; the question about Smith "rubbing his penis on [C. M.'s] vagina" refers to C. M.'s prior testimony. And to the extent the use of the term "vagina" in these questions was anatomically incorrect, as Smith contends, that matter could be clarified through further examination or cross-examination; Smith has cited no authority for the proposition and we are not persuaded that such imprecision would be ground for a meritorious objection.

"(T)he failure to make a meritless objection is not deficient performance. Because [Smith] has not shown that his counsel performed deficiently by failing to raise th[ese] objection[s], this claim of ineffective assistance fails." *Sawyer v. State*, 308 Ga. 375, 383 (2) (a) (839 SE2d 582) (2020) (citation and punctuation omitted).

(c) *Failure to object to the recording and transcript of C. M.'s forensic interview.*

At trial, a recording of C. M.'s forensic interview was played to the jury during the interviewer's testimony, and as it was played the jury was allowed to look at a transcript of the interview. The transcript, however, did not go out with the jury. Smith argues that his trial counsel was deficient in failing to object to the admission of the recording and the use of the transcript on two grounds: as inadmissible hearsay and as a Confrontation Clause violation. We disagree.

The recording of the forensic interview was admissible under Georgia's Child Hearsay Statute, which provides:

> A statement made by a child younger than 16 years of age describing any act of sexual contact or physical abuse performed with or on such child by another or with or on another in the presence of such child shall be admissible in evidence by the testimony of the person to whom made if the proponent of such statement provides notice to the adverse party prior to trial of the intention to use such out-of-court statement and such child testifies at the trial, unless the adverse party forfeits or waives such child's testimony as provided in this title, and, at the time of the testimony regarding the out-of-court statements, the person to whom the child made such statement is subject to cross-examination regarding the out-of-court statements.

OCGA § 24-8-820 (a). Contrary to Smith's argument, the Child Hearsay Statute can encompass the admission of a recording or transcript of a forensic interview. See

18

*Shaum v. State*, 355 Ga. App. 513, 516-517 (2) (844 SE2d 863) (2020); *Robinson v. State*, 342 Ga. App. 624, 629 (1) (805 SE2d 103) (2017). And the requirements of this statute were met in this case. The state gave notice of its intention to introduce the evidence, C. M. was 15 years old when she was interviewed, her statements in the interview described acts of sexual contact performed on her, C. M. testified at trial, and the evidence was introduced during the testimony of the forensic interviewer, to whom C. M. made the statements.

Smith's Confrontation Clause argument fails because C. M. was present at trial. It is true that even if evidence is admissible under the Child Hearsay Statute it

> may still be inadmissible as a violation of the accused's rights under the Confrontation Clause[, which] provides that, in all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him. The Confrontation Clause imposes an absolute bar to admitting out-of-court statements in evidence when they are testimonial in nature, and when the defendant does not have an opportunity to cross-examine the declarant. But when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it.

19

*Cornell v. State*, 349 Ga. App. 883, 884-885 (2) (827 SE2d 63) (2019) (citations, punctuation, and emphasis omitted). See also *DeVaughn v. State*, 296 Ga. 475, 478 (3) (769 SE2d 70) (2015) (holding that a Confrontation Clause objection would be frivolous where the witness testified at trial and the defendant had the opportunity to cross-examine him).

Because C. M. was present at trial and was subject to cross-examination by Smith, the Confrontation Clause did not bar the admission of her forensic interview statements. See *Cornell*, 349 Ga. App. at 885 (2). Although Smith argues that we should treat C. M. as a "different person" in her forensic interview because her statements in that interview differed in some respects from her trial testimony, he points to no authority to support this argument and we know of none.

For these reasons, Smith did not have a meritorious objection to the admission of the recorded forensic interview on either hearsay or Confrontation Clause grounds. And he offers no argument or supporting authority for the proposition that it is improper to permit the jury to look at a transcript during the playing of an otherwise-admissible recording. Consequently, trial counsel was not deficient for failing to object to either the recording or the transcript on hearsay or Confrontation Clause grounds. See *Campos v. State*, 263 Ga. App. 119, 121 (587 SE2d 264) (2003) (trial

counsel's failure to pursue futile objection against admission of child's recorded interview did not constitute ineffective assistance).

We note that, at the end of the Confrontation Clause argument in Smith's appellate brief, he includes the following sentence: "Trial counsel admitted that she did not object to [a] line of questioning [directed to two witnesses who were qualified as experts in forensic interviewing] and that it was not a matter of trial strategy for her failure to do so." This sentence suggests that Smith asserted such failure as a separate ground to support his claim of ineffective assistance before the trial court. But he did not make such an assertion in his motion for new trial. Moreover,

> the trial court made no ruling on whether trial counsel was deficient in failing to [object to that "line of questioning" of the expert witnesses], indicating that the trial court did not treat the failure to [make such an objection] as one of [Smith's] asserted grounds of ineffectiveness. This means that there is no ruling on this issue for this court to review.

*Clark v. State*, __ Ga. App. __, __ (3) (c) (858 SE2d 519) (2021) (citations and punctuation omitted). To the extent that Smith now claims on appeal that his trial counsel was ineffective for failing to make such an objection during the questioning of the expert witnesses, the claim "was neither raised in the motion for new trial nor ruled upon by the trial court [and] is procedurally barred." Id.

21

(d) *Failure to object to other instances of alleged hearsay.*

Smith argues that trial counsel was deficient in failing to object to several other instances of alleged hearsay. He has not shown ineffective assistance as to any of these instances.

(i) *Testimony from the outcry witnesses about statements made by C. M.*

Smith argues that trial counsel should have objected, on hearsay grounds, when C. M.'s cousins testified about her outcry. He contends that the testimony did not fall within the Child Hearsay Statute because they did not repeat C. M.'s "description of sexual contact or physical abuse." OCGA § 24-8-820 (a). We disagree. One of these witnesses testified that C. M. told her Smith "touch[ed] her, he was touching on her, and he offered her $5 to jack him off." The other testified that C. M. told her Smith "was touching her inappropriately" and "in ways that she didn't want to be touched," and that Smith "tried to force hi[m]self inside of her." Because the Child Hearsay Statute authorized this testimony, an objection to it on that ground would have been futile, so trial counsel was not deficient in failing to make that objection. See *Campos*, 263 Ga. App. at 121.

(ii) *Other testimony about C. M.'s statements.*

22

Smith argues that trial counsel should have objected on hearsay grounds to testimony from other witnesses that they heard C. M. had said Smith touched her inappropriately. And he argues that Smith should have made a hearsay objection when a police officer repeated statements made by C. M. in her forensic interview. Assuming without deciding that trial counsel was deficient in these respects, Smith has not shown a reasonable probability that, but for these alleged errors, the result of the proceeding would have been different, as required to establish prejudice. Instead, these alleged errors were

> harmless because [Smith] was afforded the opportunity to cross-examine [C. M. and the other witnesses] about [their] out-of-court statements, and the complained[-]of testimony was cumulative of other evidence adduced during trial[, including the admissible evidence of C. M.'s outcry and the recording of C. M.'s interview].

*Kelly v. State*, 197 Ga. App. 811, 814 (3) (399 SE2d 568) (1990) (citation and punctuation omitted).

(e) *Failure to act in response to the state's anatomically incorrect terminology.*

Smith asserts that, throughout the trial, the prosecution used the term "vagina" in an anatomically incorrect manner, by equating the term with the entire genital area, particularly the vulva. Smith contends that by equating the terms "vagina" and

23

"vulva," the state created confusion about precisely what evidence was required to show the penetration required for his rape conviction. He argues that his trial counsel was deficient in failing to take steps to alleviate that confusion, such as alerting the jury to the issue during opening statements, insisting that witnesses and the state use correct terminology, or seeking a mistrial after the jury sent the judge a note asking whether "the mons pubis and general pubic area [are] considered part of the anterior of the vagina."

But as discussed above in Division 1 (a), the vagina itself need not be entered for the crime of rape to occur; penetration of the vulva or labia is sufficient. *Loyd*, 288 Ga. at 491 (4) (c). So even if the jury were confused about the state's use of the term "vagina" to mean the vulva, that confusion would not have mattered to the determination of whether the evidence established the element of penetration. For this reason, Smith has failed to prove that his trial counsel acted deficiently in not taking steps to address this supposed confusion.

(f) *Failure to request a jury charge on statutory rape.*

Smith argues that his trial counsel was deficient in failing to request a jury charge on statutory rape as a lesser included offense of forcible rape. There is no merit to this argument, because "statutory rape is not a lesser included offense of

24

forcible rape." *Stuart v. State*, 318 Ga. App. 839, 841 (734 SE2d 814) (2012) (citation and punctuation omitted). Accord *Brown v. State*, 319 Ga. App. 680, 683 (2) (738 SE2d 132) (2013).

(g) *Cumulative prejudice.*

"[T]he effect of prejudice resulting from counsel's deficient performance is viewed cumulatively." *Jackson v. State*, 306 Ga. 69, 90 (9) (829 SE2d 142) (2019) (citation and punctuation omitted). "Recognizing this, we conclude that the cumulative prejudice from any deficiencies assumed in this (division) is insufficient to create a reasonable probability that the results of the proceedings would have been different in the absence of the deficiencies alleged." *Franklin v. State*, 351 Ga. App. 539, 555 (4) (d) (831 SE2d 186) (2019) (citation and punctuation omitted).

*Judgment affirmed. Rickman, C. J., and Senior Appellate Judge Herbert E. Phipps concur*.